1      APPELLATE COURT NO. *72966*

2      IN THE COURT OF CRIMINAL APPEALS

3      OF THE STATE OF TEXAS

4

5      -------------------------------------------------

6      REINALDO DENNES

7                      Appellant,

8      VS.

9      THE STATE OF TEXAS,

10                     Appellee.

11     -------------------------------------------------

12

13             Judge Jim Wallace, Presiding

14     -------------------------------------------------

15             Volume 2 of 39 Volumes

16             Cause No. 750,313
               January 13, 1997
17             January 16, 1997

18             Sharon Kay Cook
             Official Court Reporter
19             301 San Jacinto
             Houston, Texas 77002

20

21

22

23                                          FILED IN
                                    COURT OF CRIMINAL APPEALS
24
                                         FEB 25 1998
25
                                    Troy C. Bennett, Jr., Clerk


                                                  Page 1



Volume 3

Pre-trial Motions

January 13, 1997

January 16, 1997

```
 1                      CAUSE NO. 750,313

 2   STATE OF TEXAS              IN THE 263RD DISTRICT COURT

 3   VS.                                  OF

 4   REINALDO DENNES              HARRIS COUNTY, T E X A S

 5

 6

 7   A P P E A R A N C E S :

 8   For the State:            Mr. Don Smyth
                               Mr. Mark Vinson
 9                             Assistant District Attorney
                               Harris County, Texas
10
     Defendant Reinaldo Dennes:   Mr. Wendell Odom
11   Defendant Jose Albert Dennes: Mr. George Parnham
                                   Attorneys at Law
12                                 Houston, Texas

13

14

15            BE IT REMEMBERED that upon this the 13th

16   day of January, A. D. 1997, the above entitled and

17   numbered cause came on for motions before the

18   Honorable Jim Wallace, Judge of the 263rd District

19   Court of Harris County, Texas; and the State appearing

20   in person and the Defendant appearing in motions and

21   by counsel, announced ready for hearing, and all

22   preliminary matters having been disposed of, the

23   following proceedings were had, viz:

24

25
```

1          MR. PARNHAM:  This morning, I believe you

2   denied a motion for continuance and this is a motion

3   for continuance was filed on Reinaldo Dennes, as well

4   as Jose Albert Dennes, both defendants.  And I would

5   like to put on the record some requests I have for

6   discovery as it relates to the motion for continuance.

7          We have filed two requests for notice on

8   the part of the State with intent to offer extraneous

9   conduct, one at the guilt-innocence phase and the

10  other at the punishment phase of the trial.  Both,

11  according to the Penal Code, were filed on

12  December 4, 1996.

13         Then on December 10, 1996, we filed a

14  follow-up motion for discovery of relevant extraneous

15  matters that may be presented by the State under

16  Article 37.031 and 37.07 of the Texas Code of Criminal

17  Procedure.  Previously, on June 11, 1996, we had filed

18  a general motion for discovery and inspection

19  requesting that we be placed on notice of any

20  extraneous offenses that would be offered in the case.

21         The purpose of the Motion for Continuance,

22  and the other concern is, we have got less than 30

23  days that we are set to go to trial and we have been

24  orally informed of certain extraneous offenses that

25  may be offered at either the guilt-innocence or the

1    punishment stage of this trial.  And we have been told

2    in a very general matter what those offenses are and

3    as a result of not having any written notice or being

4    told in specifics of what the offenses are, and by

5    that, I mean date, time, county, witness, or any

6    details but we have been told generally there may be

7    an aggravated robbery or there may be a solicitation

8    of a witness case.  Because we don't have any

9    knowledge of those facts, we have been unable to

10    investigate any of those alleged offenses.  And as

11    such, we are in a position of asking the Court at this

12    point, to rule on our motions.  One of them doesn't

13    require ruling, I don't think.  One of them is a

14    request that we filed with the State but in an

15    abundance of caution, we ask the Court to rule on our

16    general motion for discovery and/or on our motion for

17    discovery relevant to the extraneous matters so we can

18    be placed on notice of extraneous matters so we can

19    prepare a defense.

20            THE COURT:  Mr. Vinson, what says the

21    State?

22            MR. VINSON:  I think the motion on

23    extraneous matters was served on Mr. Rosenthal.  I

24    spoke to defense this morning and I told him what I

25    will do.  I will get with him and try to find out

1    exactly what extraneous there is on each defendant he

2    was speaking of.  But in the presentation just now, I

3    realized he said dates, time, places.  I guess the

4    asundry and all that.

5            In punishment, I'm not required to give

6    that.  The only thing I am required to do is subpoena

7    the witnesses.  The State has the burden to prove

8    beyond a reasonable doubt that offense was committed

9    so the jury may determine if they want to give this

10   consideration in punishment.  I don't know that I have

11   to give all the details of an extraneous, if it is

12   extraneous, in proving up guilt, yes, but I can just

13   give him the aggravated robbery, 1977, or whatever.

14           THE COURT:  So you are saying the State is

15   not going to the offer any extraneous in the case in

16   chief in the guilt or innocence phase.

17           MR. VINSON:  Not to my knowledge and,

18   certainly, if that did come to pass while we are

19   picking this case, even though we are starting on the

20   10th, this case is not going to trial that day.  And I

21   take it, this motion is an ongoing motion for

22   discovery, and if at any time we discover that we

23   would be using it in the guilt, we will put them on

24   notice immediately and the Court could make a proper

25   ruling.

1          THE COURT:  As to the punishment then?

2          MR. VINSON:  But right now I don't see any

3    reason, based on my understanding of the case, I don't

4    see any reason for an extraneous other than the

5    offense was committed during the course of the alleged

6    crime and everything surrounding that alleged

7    incident.

8          THE COURT:  Okay.  So you are saying the

9    State doesn't have any plans to offer any extraneous

10   other than what are part and parcel of this offense.

11         MR. VINSON:  That's correct, the plan and

12   sequence, the shooting of the weapon off, that will be

13   actually the firing of the weapon, I mean, the design

14   of the weapon, the shooting of the security guard,

15   those allegations, all of those will be offered in the

16   case and they are aware of that.

17         THE COURT:  Okay.  Anything else to put on

18   the record on that?

19         MR. ODOM:  To clarify on one matter, we

20   are requesting the reasonable notice of any

21   extraneouses that may be offered on punishment as well

22   as under 37.071.  He said he knows of no law that says

23   he has to give us exact dates or the exact

24   information.  We, at least, believe we are entitled to

25   be placed on notice, in writing, enough information

1    that we can defend against any false allegations that

2    the State may be intending to offer in the punishment

3    stage.

4              MR. VINSON:  We will do it consistent with

5    what we have done in the past, Your Honor, and that is

6    the witnesses will be subpoenaed and I generally have

7    always broken it down to punishment, witnesses that we

8    have in the case in chief and then always put a

9    subpoena in with the punishment witnesses and it's

10   identified as such and there, give the witness' name,

11   address, and the defense then is made aware.  If we

12   have offense reports, I'll let them see the offense

13   reports and they can gather all the information they

14   have there from the offense report.  And I have not

15   sat there and edited out and we plan to offer this but

16   we will give them all the information from the offense

17   report.  I'll give them the date, county, and

18   allegations.

19             THE COURT:  And I want that done-- at

20   least, let's make it two weeks prior to the date of

21   trial.

22             MR. VINSON:  Okay.

23             THE COURT:  Or earlier; at the very latest

24   two weeks prior but my direction would be as soon as

25   the State decides it is going to offer any

1    extraneouses on punishment, you are under obligation

2    to notify the defense but no later than 15 days.

3              MR. ODOM:  To clarify, we request more

4    than what Mr. Vinson is giving in our motion and I

5    assume that is denied.

6              THE COURT:  That will be denied.

7              MR. ODOM:  We also have some motions that

8    that Mr. Vinson and I have talked about and there may

9    be at least a partial, if not a complete agreement to.

10   One is a Brady motion entitled motion for producion of

11   evidence favorable to the accused and we have a list

12   of items that we view as favorable, if the State has

13   such evidence, and I believe that Mr. Vinson maybe is

14   at least partially agreeable to that motion, if not

15   completely agreeable to that motion.

16             THE COURT:  If you will go over with Mr.

17   Vinson and normally indicate on your copy what is

18   agreed versus what is not agreed and then I will rule

19   on anything that you disagree on.

20             MR. ODOM:  Okay.

21             MR. VINSON:  Well, I think it's

22   self-explanatory.  Brady would be any evidence that we

23   would have to show that this defendant did not commit

24   this offense as favorable to him or that someone else

25   committed it.  And I'll follow that right down to the

                         .

1    law, according to the case law.  But I have nothing

2    there.  I haven't stumbled on nothing at this time.

3              THE COURT:  You are under an obligation to

4    do so.

5              MR. VINSON:  It's a continuing obligation.

6              THE COURT:  As soon as, if at any time you

7    find such information, you are under an obligation.

8              MR. ODOM:  To make sure we don't waive

9    anything, we believe with the recent Supreme Court

10   case, the United States versus Wilkinson, that we are

11   entitled to go beyond evidence that merely shows that

12   Mr. Dennes did not commit the crime, to wit, evidence

13   that impeaches a witness on the part of the State,

14   evidence that shows sloppy police work on the part of

15   the State, evidence that tends to be favorable to the

16   defendant in many ways can be viewed as Brady even

17   though it falls short of the standard that Mr. Vinson

18   has declared that being as evidence that shows that he

19   is not guilty of the offense.  We believe that it is

20   not nearly that narrow, that doctrine, but it's

21   evidence that is favorable to the defendant, it would

22   be the doctrine and especially that recent case from

23   the Supreme Court.

24             MR. VINSON:  I am not going to police the

25   police, Your Honor.  I think that he has the duty to

1    cross examine, and I'll operate consistent with Brady.

2    I'm not to go out and reinvestigate the case for Mr.

3    Odom's satisfaction.

4              THE COURT:  Certainly, if you have a

5    witness for the State was testifying and the State is

6    aware that their testimony is tainted or somehow

7    impeachable, or something of that nature, I certainly

8    want you to make that available.

9              MR. VINSON:  That's consistent with Brady.

10             MR. ODOM:  In Wilkinson, the defense

11   certainly can't police the police and it is his

12   obligation.

13             We have two other motions, one is a motion

14   to list witnesses and the other is a motion to compel

15   the preservation of rough notes.  I know that we are

16   not entitled to view the rough notes of any police

17   officer at this point.  What I request is that they be

18   preserved in the event, during the trial, we do become

19   entitled to look at those notes, to wit, there is a

20   dispute over certain issues, that they at least be

21   preserved so we can do that in the future.

22             THE COURT:  It will be granted.

23             MR. ODOM:  The second one is a motion to

24   list witnesses.  I understand that it is Mr. Vinson's

25   policy to list his witnesses.  Some prosecutors don't

1    always do that.  In an abundance of caution, we

2    request that witnesses be listed so we be placed on

3    notice as to who the State will call.

4              THE COURT:  That will be granted.

5              Is there a time frame on that?

6              MR. ODOM:  I don't have a time frame.

7              MR. VINSON:  We could have that filed -- I

8    should say we could have that filed, Your Honor,

9    within the next couple of weeks, we should be able to

10   file that.

11             THE COURT:  Okay.  Let's say then within

12   three weeks of the date of trial, no later than.

13             MR. VINSON:  Now, three weeks of the date

14   of trial, this means that we would have to file it

15   next week.

16             THE COURT:  The date of trial?

17             MR. VINSON:  What are we talking when we

18   say date of trial?

19             THE COURT:  I am talking about the actual

20   start of testimony.

21             MR. VINSON:  Okay.

22             THE COURT:  And that would be subject to

23   any new discovery obviously in this case, which you

24   discovered additional witnesses, you would be obliged

25   to notify the defense.

1          MR. VINSON:  Only if they are not rebuttal

2     witnesses.

3          THE COURT:  Certainly.

4          MR. VINSON:  I don't plan on rebuttal

5     witnesses.

6          MR. ODOM:  By that, three weeks prior to

7     the weeks going and following the testimony.

8          THE COURT:  The commencement of testimony

9     is what I meant.

10          MR. ODOM:  We have a motion for discovery

11     and inspection, and I will get together with Mr.

12     Vinson to see if works that out.

13          THE COURT:  If you don't have any

14     disagreement and note it and if you disagree, we will

15     take it point by point.

16          MR. PARNHAM:  On the behalf of Jose Albert

17     Dennes, George Parnham, his attorney, I say we, Mr.

18     Odom and I, in representation of our respective

19     clients, have filed separate motions to adopt the

20     motion of the co-defendant.  Specifically on issues

21     that are not necessarily antagnostic to either the

22     defense nor in conflict with any theory as far as the

23     defense is concerned, the motions that have previously

24     been addressed by Mr. Odom we would ask the Court to

25     permit Mr. Dennes to adopt.

1                   THE COURT:  Certainly.

2                   MR. PARNHAM:  Not on the merits but also

3       the argument of counsel as well as the rulings of the

4       Court relating to Brady, relating to any extraneous

5       offense notice and relating in general to the motion

6       for discovery.

7                   THE COURT:  Let the record reflect that.

8                   Also, do we anticipate juror

9       questionnaires?  Are we going to have jury

10      questionnaires?

11                  MR. PARNHAM:  Your Honor, I have filed

12      motions that I am not prepared to go forth with today;

13      however, in conjunction with a request that we have a

14      pre-trial hearing sometime this week, I will have

15      available for the Court a questionnaire that I have

16      already prepared and submitted for your consideration.

17                  THE COURT:  This will be a questionnaire

18      by you?

19                  MR. ODOM:  I also have a motion to adopt

20      Mr. Dennes' motion.

21                  THE COURT:  So we will do one

22      questionnaire obviously for both of them.  And you

23      will have that for me this week.

24                  MR. PARNHAM:  I would like to have that

25      tomorrow.

1              THE COURT:  I would like to start on it as

2    quickly as possible.  Is it pretty standard?

3              MR. PARNHAM:  It is.  Your Honor, in

4    conjunction, for instance, the voir dire and the list

5    of witnesses, I would assume that some of the

6    questions that would be posed to the jury panel will

7    be their knowledge of individuals that the State and

8    the defense anticipates to be called during the course

9    of the trial.  And I am wondering if we could have a

10   list of the State's witnesses that will appear both in

11   the guilt or innocence and in the punishment sometime

12   prior to the day before we begin jury selection so we

13   may intelligently quiz the prospective jurors, to

14   determine whether or not that juror knows any of the

15   witnesses, and if so, if their knowledge of that

16   particular witness might in any way impact their

17   decision on the evidence presented.

18             THE COURT:  I think my ruling covers that,

19   if they have got to give you that list no later three

20   weeks prior to the commencement of the actual start of

21   testimony.  That's well in advance of the date we

22   actually commence voir diring the jury because we are

23   here on the 13th and we are not going to start that

24   process until the 10th.  We are a month away from that

25   now.

1              MR. VINSON:  That's what he is saying,

2     Judge.  We have to file that next week.

3              THE COURT:  Okay.  Let's say we are going

4     to start on the 10th of February.  I would certainly

5     think in advance of that you would have a basic list

6     to provide them ahead of time as to a list of

7     witnesses.  We are talking about almost a month's

8     time, just short of a few days, so, Mr. Vinson, if we

9     start this on the 10th, which is a Monday, if sometime

10    on the 3rd, which is the first Monday in February, I

11    would think that you could provide to the defense your

12    additional list of witnesses.

13             MR. VINSON:  Can I do this, Your Honor,

14    and this way I can make sure the bases are covered.

15    I'd just like to state the way we do business as

16    usual.  I file all my subpeonas with the clerk's

17    office and once with the clerk's office, that's notice

18    to the defense.

19             THE COURT:  You will file that in advance

20    of February 3rd?

21             MR. VINSON:  Yes.  I will file with the

22    clerk's office.

23             (Off-the-record discussion held.)

24             MR. PARNHAM:  We have filed -- before we

25    get to that, there was some discussion concerning the

1    return of seized property, specifically the property

2    that was secured as a result of the execution of a

3    search warrant issued out of Judge Godwin's Court for

4    the premises of the business that supposedly belonged

5    to the co-defendant Ray Dennes.  It is my

6    understanding, and I talked to Mr. Smyth on Friday,

7    that the State proffered to us the possibility that

8    the partner of the complainant in this case will be

9    permitted to go to HPD and to determine what, if any,

10   item obtained as a result of that search in his

11   opinion came out of the business of the co-defendant

12   Mr. Ray Dennes.  I informed Mr. Smyth that was

13   absolutely agreeable with me.  He told me he would try

14   to get those arrangements made.

15              THE COURT:  You said the partner of the

16   complainant?

17              MR. PARNHAM:  Yes.

18              THE COURT:  We will go to HPD and see if

19   any of that came out of the property of the deceased.

20   You meant the deceased?

21              MR. PARNHAM:  But that stuff we are

22   talking about was seized out of.

23              THE COURT:  I understand that.  I

24   understand that.

25              MR. PARNHAM:  The State has no problem

1    with that?

2              MR. VINSON:  That's right.

3              MR. PARNHAM:  This presents another issue

4    that we, I'm sure, can resolve if, in fact, there is

5    an item or items that the partner determines -- at

6    least makes an opinion that the item came out of the

7    deceased's property, then I assume that we will be

8    noticed or will have some notice from the State as to

9    the particular item it is well in advance.

10             THE COURT:  I think we ought to categorize

11   that we agree what is not involved versus what is.

12             MR. PARNHAM:  By way of absolutely the

13   upmost caution, I take it, that the statement by Mr.

14   Vinson that there would be no extraneous activity in

15   his opinion that would come in during guilt or

16   innocence would also go to any item of evidence that

17   was seized from either Mr. Dennes, my client, Albert

18   Dennes, or Mr. Ray Dennes that may be contraband from

19   another highjacking or robbery.

20             THE COURT:  It sounds extraneous to me; is

21   that right?

22             MR. VINSON:  Unless, you know, it has some

23   relevance or if they open the door.

24             THE COURT:  Essentially if the door is

25   opened, but otherwise that's my understanding as well

1     as Mr. Parnham's.

2               MR. VINSON:  If it is, this doesn't

3     necessarily mean --

4               MR. PARNHAM:  We have filed a request to

5     have an ex parte hearing on some matters that are

6     relevant to the defense in this case.

7               THE COURT:  Do you still think that is

8     relevant considering the conversation we had last

9     week?  I thought we touched upon that a little bit.

10              MR. PARNHAM:  No, sir.

11              THE COURT:  It doesn't have anything to do

12    with the South African --

13              MR. PARNHAM:  If it was plutonium, we

14    wouldn't have any platinum.

15              MR. PARNHAM:  There are other matters,

16    Judge.

17              THE COURT:  I certainly want the State --

18    has the State seen that motion?

19              MR. PARNHAM:  Yes, sir, we've seen a copy.

20              THE COURT:  Thursday, we can discuss that

21    and rule on that.  But if we are going to have experts

22    and things of that nature, we need to get to it pretty

23    quickly.

24              MR. PARNHAM:  There is one other matter

25    that, again, out of an abundance of precaution, when

1      we talk about notices as far as extraneous matters are

2      concerned and I understand that the whole

3      circumstances, i.e., relationship between the parties

4      and the activities of supposed activities of the

5      defendants in preparation and execution should be of

6      any matter made the basis of the indictment, what will

7      be judged during a court of time and as far as the

8      admissibility is concerned there is and I have been

9      told by Mr. Rosenthal and made this comment to Mr.

10     Vinson that at some point in time both individuals

11     were either suspects and/or targets of an

12     investigation relating to the conspiracy to commit

13     capital murder of a witness in this case.

14            Now, we haven't received anything in

15     writing on that but I can certainly see how it could

16     be argued that may be an end of it be part and parcel

17     that surrounds the admissibility in this case without

18     given written notice.

19            MR. VINSON:  Are you talking about the

20     Rolex shooting?

21            MR. PARNHAM:  Specifically we were

22     informed by Mr. Rosenthal and it was alluded to, for

23     instance, the father of the Dennes brothers may be a

24     suspect or a target in a conspiracy to commit capital

25     murder, as I understand it, of one of the witnesses

1    involved in this case.  There was also a statement by

2    Mr. Rosenthal that the defendants in this case were

3    also going to be filed on for conspiracy to commit

4    capital murder of a witness in this case.  And that's

5    all we have heard.

6         Now, I checked the computers and found

7    there was no case filed and talked to Mr. Vinson.  He

8    didn't think there was going to be any case filed.

9    Mr. Rosenthal told me he did not file a case but there

10   is still this nebulous --

11        MR. VINSON:  I'll check on that to see

12   because it could be an extraneous offense on

13   punishment, so I'll check on that.

14        THE COURT:  Let's make sure, for the

15   record, I kind of agree that would be part and parcel

16   of the same offense.  And if offered, it would be of

17   an extraneous nature and that previously I gave you

18   adequate --

19        MR. ODOM:  For the record, so they will

20   understand what we are talking about, up until this

21   day, there was another prosecutor, Mr. Rosenthal, who

22   was lead prosecutor in this case.  After the first of

23   the year, Mr. Rosenthal is no longer the lead

24   prosecutor in the case.  Mr. Vinson is the lead

25   prosecutor in this case.  Anybody reviewing this

1    record would not understand what we are talking about.

2                    MR. VINSON:  He is still in the office.

3                    MR. PARNHAM:  Just a couple of other

4    items, to give the Court adequate notice, there will

5    be filed a motion for severance in this case.  We have

6    discussed this with Mr. Vinson, discussed it in the

7    hallway from time to time with Mr. Rosenthal.  Just so

8    the Court is aware, we will try to get it on file.  We

9    may not be able to have a hearing on this coming

10   Thursday.

11                   THE COURT:  You know my predisposition

12   unless adequate cause or reason, my view at this time

13   would be to deny that.

14                   MR. ODOM:  We understand.

15                   THE COURT:  Thank you very much.

16                   (Court adjourned for the day.)

17

18

19

20

21

22

23

24

25

1                          CAUSE NO. 750,313

2       STATE OF TEXAS                IN THE 263RD DISTRICT COURT

3       VS.                                    OF

4       REINALDO DENNES               HARRIS COUNTY, T E X A S

5

6       A P P E A R A N C E S:

7       For the State:               Mr. Mark Vinson
                                     Mr. Don Smyth
8                                    Assistant District Attorneys
                                     Harris County, Texas
9
        Defendant Reinaldo Dennes:    Mr. Wendell Odom
10      Defendant Jose Albert Dennes: Mr. George Parnham
                                     Attorneys at Law
11                                   Houston, Texas

12

13              BE IT REMEMBERED that upon this the 16th

14      day of January, A. D. 1997, the above entitled and

15      numbered cause came on for motions before the

16      Honorable Jim Wallace, Judge of the 263rd District

17      Court of Harris County, Texas; and the State appearing

18      in person and the Defendants appearing in person and

19      by counsel, announced ready for hearing, and all

20      preliminary matters having been disposed of, the

21      following proceedings were had, viz:

22

23

24

25

1           THE COURT:  We are looking at the motion

2     to proceed ex parte, and I have asked the State for

3     their position on that particular motion.

4           MR. VINSON:  You know, the only thing,

5     Judge, he is requesting funds to assist in their

6     defense.  I have no objection to, you know, whatever

7     the Court sees fit in the funds that he needs for the

8     defense, if he needs funds for a defense.  It looks

9     like these two attorneys were hired, you know, by the

10    family so the question of funds, how does that

11    become --

12          THE COURT:  That's the first issue.  Since

13    these are both retained, I think there is an issue

14    about having retained counsel and coming to the State

15    saying they are paying us but we want the State to pay

16    for all the expert witnesses and I'm not quite sure.

17          MR. ODOM:  Well, the clients themselves

18    are not paying us.  The clients are not in a position

19    to pay us.

20          THE COURT:  Right.

21          MR. ODOM:  Their assets primarily have

22    been seized.  They are not in a position.  Primarily

23    the mother and father of our clients have been paying

24    us to represent them but our clients are indigent, and

25    we intend to file a pauper's oath, if the Court needs

1    to do so in that regards.  That doesn't mean, however,

2    the family hasn't stepped forward, which they have

3    done, to pick an attorney of their choice but our

4    clients remain indigent as they did before.  If

5    anything, the State had a windfall that ordinarily

6    where they have to pay for an attorney, not have to

7    pay for one, not because of the clients because of the

8    clients' family.

9              THE COURT:  Let's speak to the latter --

10   is this what you want to go on the ex parte, the type

11   of expert we are looking for?

12             MR. PARNHAM:  The need for expert

13   witnesses and obviously that would dictate the type of

14   expert witness that we are requesting.  And in order

15   to establish the need for the expert witness, we would

16   feel compelled to request the ex parte hearing so that

17   the Court may rule upon that in that it impacts the

18   defense that both the Dennes brothers foresee it as

19   the defense to these allegations.

20             THE COURT:  Well, obviously this is unique

21   to me.

22             MR. VINSON:  You, know, generally if a

23   person is going to allege that, they have got to give

24   the State some notice and then they go with the

25   experts.  We understand that.  I have not ever been a

1    party to an ex parte in a defensive issue.  I have no

2    idea what kind of witnesses they are talking about.

3    Obviously they can't be talking about --

4            THE COURT:  Well, I certainly don't want

5    to be in a situation where we spring surprises on

6    either side.  If you have a defensive issue that needs

7    to be pursued and you need expert witnesses and expert

8    assistance, that's one thing.  But to say we want to

9    do this in secrecy, and I am somewhat apprehensive

10   about proceeding along those lines.

11           MR. PARNHAM:  I think what we are

12   concerned, and the Court alluded to this earlier,

13   based on the previous conversation we had relating to

14   the folks in South Africa and the folks in Canada,

15   these motions do not necessarily relate to those

16   issues; however, it is our position that we, as the

17   representatives of these defendants, are not compelled

18   either by statute or Constitutional law to reveal the

19   defense to the prosecution.  It is our position that

20   if we have a proceeding, an initial proceeding, to

21   establish a threshold need to have witnesses and

22   experts appointed, and if that particular proceeding

23   is participated in by the State, it doesn't take a

24   rocket scientist to figure out the State is going to

25   be made available to the defense that we will proceed

1    with during the course of their case.  And that's

2    simply the reason why we are asking for an initial

3    proceeding to show, first of all, the need and the

4    type of expert witnesses and the funds to secure those

5    witnesses so that we may defend our clients.

6            THE COURT:  Well, I'm just not inclined to

7    grant an ex parte of this nature.  If you are

8    requesting funds for an expert witness to develop a

9    defensive theory, then it ought to be such, you know,

10   we place that on the record, in front of the

11   participants of both the State and the defense.  And

12   if it's such a critical nature, then it seems like we

13   would seek private funds to do that so you would not

14   have to reveal your defensive issue, and if you are

15   coming to me for monies to do that and, to me, it

16   ought to be an opening proceeding and the State ought

17   to be able to participate.  That's my position.

18           MR. PARNHAM:  Do we have any progress yet,

19   if I may ask Mr. Vinson, on the issue related to the

20   jewelry that was seized and whether or not there --

21           MR. VINSON:  Yes.  Mr. Smyth, in speaking

22   with him this morning, and he was here for a while

23   this morning, he has been working on that this week.

24   And he brought to my attention that the detectives who

25   are working on that have determined that some of the

1    jewelry -- I don't know to what extent -- but there

2    are some items there that are stolen that your client

3    does not have a right to possession or a question if

4    he has a right to possession of.  So we were going to,

5    base on that, we was going to request that the Court

6    give us a little bit more time to let the detective go

7    through what they have over there.  Apparently they

8    have been doing it this week, I guess, to see exactly

9    what they can determine is stolen and what is not.

10                    MR. PARNHAM:  Have they indicated they

11   were stolen out of the robbery made the basis of this

12   or other extraneous activities?

13                    MR. VINSON:  We had a very short

14   conversation because I was trying to do several

15   things, in speaking with him, I guess, this hearing,

16   and he made me aware there was discovered that some of

17   the items had been stolen.

18                    MR. PARNHAM:  Without identifying the

19   source?

20                    MR. VINSON:  Right.  I was trying to do a

21   couple of things and I didn't want to go in any

22   detail.

23                    THE COURT:  It seems you and the State

24   need to go together and go over your motions and see

25   where you agree and where you disagree, see if you can

1    agree on some time frames that you can live with and

2    then come back and see me where you can agree on

3    certain requests, or if the time frame the State is

4    offering you is something you can't work it in, and I

5    can go on the record and set time requirements that

6    the State produce what I think should be produced and

7    to basically have a ruling on the record about all

8    these various motions.  It seems like a waste of time

9    until you all go over there and see that you can agree

10   on A, B, C and not D, E or we don't agree on the time

11   frame.  Let's get that done and it will save us a lot

12   of time, when we are up here, so I know specifically

13   what it is I need to make a ruling on without

14   generally having to be rambling through all these

15   motions and we do this expeditiously.  If you want, to

16   me -- that's all up to you.

17            You need to meet and get that done and put

18   it on the record, as quickly as possible, what you are

19   requesting, what my rulings are, and if I give the

20   State some deadlines, we need to get that on the

21   record as quickly as possible to make sure the State,

22   as well as the defense, has adequate time to develop

23   the case in the time frame we have got.

24            MR. ODOM:  Judge, I agree with that.  I

25   would, however, like to put this on the record that

1    this morning I was informed for the first time that

2    the State would proceed against my client on the death

3    penalty in that they will not proceed on co-counsel's

4    client with the death penalty.

5         MR. VINSON:  I haven't decided.  I am

6    proceeding on your client first.

7         MR. ODOM:  I'm sorry.  They will proceed

8    on my client first, which is the gist of what I am

9    trying to say.  And that is a surprise to me.  That,

10   as was pointed out in the original bond hearing, when

11   a pre-trial release was submitted to the Court, the

12   finances that my client had, that my client is, for

13   all practical purposes indigent, that I have a family

14   member here today that will testify that any assets

15   that my client has are either seized or not available

16   to my client.  That I have previously made a motion

17   for continuance because I didn't think I could be

18   ready to go to trial February 10th.

19        I re-urge the motion in light to have this

20   latest discovery based on the fact that I now find

21   myself in a position of, by myself, preparing for

22   trial instead of preparing for trial with co-counsel

23   on that date.  And I would ask the Court to reconsider

24   the motion for continuance or to consider appointing a

25   co-counsel to sit with me during the trial, as is

1    customarily done in Harris County, when an indigent

2    client is charged with the death penalty because of

3    the tremendous amount of hours and tremendous amount

4    of research and discovery and effort that has to be

5    done in any capital case.

6            THE COURT:  The motion for continuance is

7    denied.  Come back in the morning and we will discuss

8    the issue of co-counsel.

9            Anything further that we need to take care

10    of today?

11            MR. PARNHAM:  Two things:  Based on our

12    observation, we would ask, for the record now, the

13    Court to set a deadline for a reply from the State

14    concerning the property seized, since this is germane

15    and, obviously, to the issue inasmuch as we are not

16    going to be permitted expert witnesses, if we are

17    financed by the State --

18            THE COURT:  I didn't say that.  We are not

19    going to proceed with an ex parte with your request

20    for expert witnesses financed by the State.

21            MR. PARNHAM:  If, in fact, we can have a

22    deadline set by the Court for the State to inform us

23    concerning the property seized.

24            THE COURT:  I don't see why that can't be

25    done post haste.

1              Is there any reason that can't be done

2       immediately?

3              MR. VINSON:  They are working on that

4       immediately.

5              THE COURT:  I want it done by Wednesday,

6       the 22nd.

7              MR. PARNHAM:  The other thing is this:

8       If we could get in writing -- well, we have already

9       talked about the notices as far as the extraneous

10      offenses are concerned both to the punishment and to

11      the guilt or innocence.

12             THE COURT:  I think we have it on the

13      record.

14             Anything further?

15             MR. PARNHAM:  No.

16             THE COURT:  And you are going to come back

17      to me, I assume, within a day or so and say we have

18      met, we are meeting, this is what we agree on, this is

19      what we can't agree on, or something, because, you

20      know, I am putting it on you gentlemen to get this

21      taken care, for what we need to place on the record,

22      and I don't want to be sitting here in two weeks and

23      we are still at the same point and the motions haven't

24      been resolved.  I am instructing all of you to get

25      together quickly this coming week, and I want all of

1    these motion issues out of the way either with

2    agreements, my rulings and deadlines as to those

3    things that require deadlines for the State to

4    produce.

5             MR. PARNHAM:  In matters relating, for

6    instance, to motions to suppress, motions to quash the

7    indictment, things of that fashion, are those matters

8    that the Court anticipates having heard during the

9    course of the case itself or will they be heard in

10   separate pre-trial?

11           MR. VINSON:  I prefer that be done as

12   early as possible.  If they have the motion to quash,

13   we can even address that tomorrow morning rather than

14   wait.

15           THE COURT:  Address it and set it for a

16   hearing as quickly as possible and do both cases at

17   the same time in regards to the pre-trial motions.

18           MR. PARNHAM:  I'll be here in the morning.

19           THE COURT:  Thank you very much.

20

21

22

23

24

25