IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **REINALDO DENNES,** | § | |
| **Petitioner** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. H-14-0019** |
| | § | |
| **WILLIAM STEPHENS,** | § | |
| **Director, Texas Department of Criminal** | § | |
| **Justice, Institutional Division,** | § | |
| **Respondent** | § | |

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | |
| **COUNTY OF HARRIS** | § | |

## *AFFIDAVIT*

BEFORE ME, the undersigned authority, on this day personally appeared Wendell A. Odom, Jr. who being duly sworn upon his oath, stated as follows:

"My name is Wendell A. Odom, Jr. I am over twenty-one years of age. I am of sound mind and am fully competent and authorized to make this affidavit. I have personal knowledge of the statements of fact contained herein, and the statements contained herein are true and correct.

I was trial counsel for Reinaldo Dennes in the capital murder trial styled State of Texas v. Reinaldo Dennes, cause number 750313, in the 263rd District Court in Harris County, Texas. The trial took place in August 1997.

Dennes was convicted of the murder of Janos Szucs a jewler in Southwest Houston that took place on January 24, 1996. The State was seeking death at the punishment stage of the trial. During the punishment phase the State called David Balderas who testified that the defendant masterminded a violent home invasion burglary/robbery that was committed by Hector Fugon and Angel Elvra. Balderas testified he set up and attended the meeting where the home invasion was planned.

The State concealed from me valuable impeaching information during the punishment phase of this trial. The impeaching information concerned the State's only future dangerousness witness, David Balderas, whose testimony linked Reinaldo Dennes to prior violent crimes. The impeaching information about Balderas was not disclosed either before or during Dennes' trial. The potential impeaching evidence consisted of the following:

1

I now know that Balderas lied during Mr. Dennes' punishment phase when Balderas testified that he was never arrested on other charges that would have led him to talk to the D.A. about a home invasion robbery offense (the Tsang home invasion robbery). See State v. Dennes Trial Transcript, Punishment Hearing, Vol. 34, pp. 83-89.

I now know that Balderas had been arrested and charged on February 4, 1997 for a state charge of Felony Possession of Marijuana. He was charged in the 339th District Court, Harris County, Texas. See Exhibit A, David Balderas Felony Possession of Marijuana Indictment and Offense Reports.

Balderas testified he first talked to HPD Homicide about the Tsang burglary in February 1997. His felony arrest for Felony Possession of Marijuana occurred February 4, 1997. However, Balderas testified that he (Balderas) voluntarily approached HPD Homicide through his homicide detective brother-in-law in February 1997, and testified that he had not been arrested for something that brought him to speak to investigators. Balders had been arrested, charged and was either an informant for the State or discussing his pending charges with the State in February of 1997. These facts and this arrest were never disclosed to me. Balderas' false testimony went uncorrected by the State.

I now know that David Balderas first spoke to HPD lead Homicide Detective Todd Miller in the Janos Szucs murder investigation that led to the indictment and prosecution of this case, as early as July 9, 1996. See Letter from HPD Sgts. Todd Miller and Jim Ladd to Chuck Rosenthal, District Attorney's Office (dated July 9, 1996), attached as Exhibit B ("I have also been in touch with David Balderas and he is still cooperative. Balderas' story differs from Fugon's slightly, but can be worked out I'm sure.").

Furthermore, I am now aware that the Houston Police Department and the Harris County District Attorney's Office knew that Balderas' version of the burglary conflicted with that of the two persons arrested, prosecuted and convicted for the Tsang home invasion robbery. Hector Fugon and Angel Elvira's statements, according to the Houston Police Department's records, conflicted with Balderas'. The HPD or the District Attorney's Office never turned over this critical Brady material to me. If all of this impeaching information had been disclosed, I would have been able to impeach Balderas concerning these issues.

Balderas' alleged co-conspirators in the Tsang home invasion robbery had gone to trial previously, and after trial, had been convicted and sentenced to fifty and thirty years imprisonment in the case of State v. Luis Hector Fugon, cause numbers 708544 and 708545, in the 232nd District Court, Harris County, Texas, and forty and twenty-five years imprisonment, in the case of State v. Franscisco Tabares Elvira, cause numbers 708546 and 708547, in the 232nd District Court, Harris County, Texas, respectively. Thus Balderas, as their co-conspirator, was facing a similar thirty to fifty year sentence for his participation in this offense, but escaped that fate by cooperating with the police and prosecutors.

Assistant District Attorney Chuck Rosenthal (Dennes' initial prosecutor upon his arrest in March 1996 until January 1997) had approached Robert Alexander, attorney for Luis Hector Fugon, during Fugon's trial in July 1996. This was over a year before Balderas' testimony in the Dennes

punishment phase. Rosenthal had asked Mr. Alexander if his client wished to testify against Balderas. Rosenthal "indicated to me (Alexander) that Mr. Balderas allegedly murdered a jeweler on the southwest side of town, and that Chuck Rosenthal wanted to put a needle in his arm." Affidavit of Robert F. Alexander; State v. Hector Fugon Trial Transcript. The fact that Balderas was considered a suspect in the murder of Janos Szucs, and was threatened with the death penalty by Harris County District Attorney Chuck Rosenthal, was never disclosed to me for use in impeaching Balderas during his testimony.

Balderas' alleged co-conspirator in the Tsang home invasion robbery, Hector Fugon, had previously testified in his trial that he did not know a David Balderas. During their trial testimony in 1996, both Fugon and Elvira failed to identify Reinaldo Dennes as having participated in the Tsang home invasion robbery. These were facts that the Harris County District Attorney's Office was well aware of because it prosecuted both Fugon and Elvira.

Balderas said he met with Elvira, Fugon and Dennes during Dennes' trial. See State v. Dennes Punishment Phase Transcript Vol. 34, pp. 63-65. However, Angel Elvira, who was convicted of participating in the Tsang home invasion robbery along with Hector Fugon, never stated that he met with Fugon, Dennes and David Balderas at a Burger King restaurant to discuss carrying out the Tsang home invasion robbery. See Letter from HPD Sgts. Todd Miller and Jim Ladd to Chuck Rosenthal, District Attorney's Office (dated July 9, 1996), attached as Exhibit B.

Balderas referred to Angel Elvira as "Francisco Elvira" during Dennes' punishment phase trial. Angel Elvira testified during his trial that his true name was Angel Elvira and the reason he was charged as "Francisco Elvira" was because he had been stopped and arrested while using his brother, Francisco Elvira, driver's license. Balderas did not know Angel Elvira's correct name, but identified him by a false name. I could have impeached Balderas testimony that he was familiar with Elvira and personally knew him before.

The particular facts surrounding the Tsang home invasion extraneous offense were not disclosed by the State to me until August 13, 1997, only two to three days before the start of trial. The State had interviewed Balderas over a year before the start of the trial, and was aware for over a year of the discrepancies concerning Fugon's and Elvira's testimony. If I had notice of the Brady material contained in the differing versions I could have effectively impeached Balderas.

I now know that Assistant District Attorney Vinson misled the trial court during the pretrial hearing. I now know that Vinson testified incorrectly about how and when Balderas first

came to the attention of the police and the District Attorney's office. See State v. Dennes Trial Transcript, Vol. 24-A, pp. 4-17 Pretrial Hearings (August 18, 1997).

I now know that the Harris County District Attorney's Office and the Houston Police Department were aware as early as July 1996 that both Fugon and Elvira denied knowing Reinaldo Dennes or any Cubans. See Letter from HPD Sgts. Todd Miller and Jim Ladd to Chuck Rosenthal, District Attorney's Office (dated July 9, 1996), attached as Exhibit B. HPD Sgt. Todd Miller wrote to Rosenthal, "If we can get something worked out with Fugon concerning the home invasion, or

just go with Balderas' statement, and taking into account the Burglary, and the shooting Albert lied about, maybe we can get 'death' on Ray and or Albert." Id.

I am now aware that during this time period, and the years before and after, that Balderas was an informant for HPD. This information about his relationship with the State was revealed in a Federal proceeding. In 1999 Balderas was charged and plead guilty in the Southern District of Texas , Brownsville Division,  to federal narcotics trafficking (cause number 7:98-CR-00154-2). During the sentencing hearing, before Judge Ricardo Hinojosa, Balderas' attorney, John Munier, represented the following:

> MR. MUNIER: But the simple fact of the matter is my fellow, who has been a cooperating informant for years with the Houston Police Department -- as a matter of fact, ten days after I left the DA's Office in Houston in 1989, I was called by a couple of narcotics officers that I've known for years and asked me to shepherd him through the system when his problems came up because basically he had been cooperating with him on a long-term basis.
> And this particular circumstance, he was set up by a Federal DEA informant, who was told to come down here and meet with these other two fellows, and he did exactly what he was told and then he was arrested.
> He was kind of halfway between his Houston handlers and these fellows down here. And of course, he was just far enough off -- "off the reservation," as they would say, that we ended up -- after my analysis of the situation where we entered our guilty plea and we've come before the Court.

See United States v. David Balderas, Cause No. 7:98-CR-00154-2, United States District Court for the Southern District of Texas, Brownsville Division, Sentencing Hearing p. 5-6, attached as Exhibit  C.

> MR. MUNIER: No. No, I understand, Judge, but frankly, Judge, he [David Balderas] basically still maintains the posture of cooperation with the law enforcement. Whether he's paid or not, that's not the issue. He's been passing on information for years and to his own detriment. He's actually had a family member murdered early in the game, which I didn't also produce, but I didn't really want to do that, so.
> THE COURT: Well, the wife --
> MR. MUNIER: Yeah.
> THE COURT: But there's no indication here that this was in relationship to his cooperation and assistance.
> MR. MUNIER: Well, it was never quite proved, but no other reason for his wife being murdered. You know, I mean -- all I'm saying is this fellow is a creature of the system.
> THE COURT: This is way back in 1988.
> MR. MUNIER: That's true, Judge. That's what I'm -- I came across him in 1989 when I left the DA's Office and he even cooperated before I left the DA's Office in Harris County.

THE COURT: <u>Okay. Well, he's been cooperating during all this period of time, but then there's been a continuation of arrests and dismissals on him, I guess.</u>

MR. MUNIER: <u>Well sometimes he's actually arrested as part of the operation, Judge.</u>

THE COURT: <u>It doesn't say that.</u>

MR. MUNIER: I know it doesn't say that, and I doubt -- you know, this is a dirty, insidious game and that's what the problem is in some respects. You're right. You know, your inherent distrust of it is to no avail.

THE COURT: <u>There's no inherent distrust of this. What the inherent distrust is if somebody acting like they're cooperating and providing assistance and being an informant when they're out violating the law. There's -- that makes a very serious distrust of that type of behavior and that's what we have here.</u>

MR. MUNIER: Well you know, and it's the reason –

THE COURT: And believe me, he becomes worthless to the Government because you put this man on the stand the next time he testifies, what do you think the jury is going to think about this?

MR. MUNIER: Well usually the argument of the Prosecutor is well, you can't -- you know, fleas, as long -- fleas on the dog. That's usually what the argument is.

THE COURT: No, but in this case --

MR. MUNIER: They always adopt him somehow and get their convictions.

THE COURT: -- but in this case we have the added problem that while he's been adopted, he's running amok here.

MR. MUNIER: Well --

THE COURT: <u>A lot of times it's stuff that's in the past and they're testifying about stuff they had done in the past, but they're no longer doing that. They're just being paid now and they're providing information and have rehabilitated themselves to some extent in some situations, they've actually rehabilitated themselves. But in his case, while he's being paid and providing the information, he's also violating the law. That's not the usual situation we get as witnesses from these people.</u>

MR. MUNIER: Well Judge, as I was trying to explain, in this particular situation we had no clear orders on him and we left the reservation and that's why I pled -- that's why we pled guilty.

THE COURT: There were no orders. You didn't leave the reservation. That was his reservation. That's what he was involved in.

MR. MUNIER: Well, I --

THE COURT: I mean, he was involved in drug transactions. He wasn't doing his -- maybe I missed something, but is the claim here that he was doing undercover work or informant work here?

MR. MUNIER: <u>They were -- they did not have clear signals with the HPD narcotics police officer that's been handling Mr. Bradley. And I've discussed that with Mr. Bradley, as well as Mr. Martinez.</u>

THE COURT: Mr. Balderas, you mean?

MR. MUNIER: Yes, yes.

MR. MARTINEZ: Your Honor, I --

THE COURT: Is there a Mr. Bradley someplace?

5

        MR. MUNIER: Well that's the HPD officer that's been handling him.

        MR. MARTINEZ [FEDERAL PROSECUTOR]: HPD Detective Bradley, I spoke to him. He said absolutely in no way did this Defendant have permission to come down here to do a drug deal -- to get involved in a drug deal. He wasn't working for HPD. And then Officer Bradley said he would come down and testify to that effect. However, Officer Bradley did tell me that Mr. Balderas in the past had been a very reliable informant and that subsequent to his arrest that he had assisted the HPD in seizure of at least 2 kilos of cocaine, three to four individuals and over $15,000 in cash and that's the basis for the Government's 42-month recommendation on a 5K1, Your Honor.

        But absolutely in this case, Officer Bradley told me there was -- there's no way this man could have thought that he was going to be working as an undercover and that's why he pled guilty, I believe.

        THE COURT: Well let me make some findings.

See United States v. David Balderas, Sentencing Hearing, Id. at 12-16, attached as Exhibit C.

        It is now apparent to me that Balderas had been an HPD informant since at least 1989 to 1999 and the Harris County District Attorney's office and HPD knew it. This contrasts with Vinson's testimony during the motion for new trial hearing. See State v. Reinaldo Dennes, Motion for New Trial Hearing Transcript, Vol. 36, pp. 81-89, pp. 90-95.

        I am now aware that the State failed to disclose all of this known impeaching information regarding David Balderas. As such, I was unable to use the information as trial counsel for Reinaldo Dennes.

        In my opinion, as trial counsel for Reinaldo Dennes, the importance of the witness Balderas cannot be overstated. He was the only witness to provide additional evidence of criminal activity supporting allegations of future dangerousness. Additionally the evidence was of such a nature that its content was extremely damning. The evidence not revealed by the State is not only impeaching but eroded the integrity of the entire punishment phase of the trial.

FURTHER AFFIANT SAYETH NOT.

        I DECLARE UNDER PENALTY OF PERJURY, PURSUANT TO 28 U.S.C. § 1746, THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on the ___17___ day of ___September___, 2015

Affiant

Sworn to and subscribed before me on this the 17th day of September 2015, to which witness my hand and seal of office.

**MARY C MOORE**
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
**SEPT. 3, 2016**

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

7

# EXHIBITS

Exhibit A        David Balderas Felony Possession of Marijuana Indictment and Offense Reports

Exhibit B        Letter from HPD Sgts. Todd Miller and Jim Ladd to Chuck Rosenthal, District Attorney's Office (dated July 9, 1996)

Exhibit C        United States v. David Balderas, Sentencing Hearing, Cause No. 7:98-CR-00154-2, United States District Court for the Southern District of Texas, Brownsville Division (July 29, 1999)

**Exhibit A**

David Balderas Felony Possession of Marijuana Indictment and Offense Reports

# 1 2 3

NAME JAIL   RM 7-4-64
BALDERAS, DAVID RENE    SPN#    CHARGE POM    BOND REQ 1,000,000.

CAUSE# 744292    DIST. CT. 339    CW TEXAS    FILING AGENCY HPD    OR# 1548097D

RECOMMENDATION   Jan Menier 228-2121   Tel. #

△ Atty. Appointed ☐   Retained ☑   Atty. Read File Yes ☐ No ☐   Date Read ___

COMPANION CASES & CAUSES
CO-DEF's:
P. GARCIA
2 FEL

DATE OFF 2-4-97   DATE CHG. 2-4-97   DATE TO CENT REC FEB 7 1997   AUTH ADA COTTON/699

△ Atty. (Co-Counsel, Subsequent)

GJ DATE
1-3/5
ADA HALLING
DATE WAIVED IND.

TRUE BILL
MAR 3 1997

FOREMAN 228th

E. BACTION/DATE

SETTINGS   DATE   PURPOSE
2/6/97 - PC fund - bnd $1,000,000 -
3-11-97   arr
4-11-97   Disp.
5/9/97 DISP

DISMISSAL
1. Convicted in another count or cause no.
2. In custody elsewhere
3. Old case, no arrest
4. Missing witness
5. Request of compl. witness
6. Motion to suppress granted
7. Co-D tried, this D testified
8. Insufficient evidence
9. Co-D conv, insuff. evidence this D.
10. Case refiled as cause no.
11. Other (see dismissal form)

Disposition Date 5-9-97
Disposing ADA Lambright

GRAND JURY TESTIMONY
9632782 / 11 / Agt BI / 1996 / Dismd
9132781 / 11 / Agt BI / 1996 / Dsml
0541580 / 784 / Hy / 1990 / 3 days HCJ
89288 / 2 / DWLS / 1989 / 3 days HCJ
8831924 / 7 / CAW / 1988 / 4 Days HCJ
0510218 / 228 / Poss Coc / 1988 / Dismld
0628935 / 6 / Pom / 1988 / 3 days HCJ

RECEIVED FEB 13 1997 G.J. DIVISION

PRIORS
☐ 1st Offender
☐ 2nd Offender
☐ Habitual
☑ SJF Habitual
△ Prior Probation
☐ On Probation
☐ Prior Deferred
☐ On Deferred

3330A



| | |
|---|---|
| THE STATE OF TEXAS | · D.A. LOG NUMBER: **331506** |
| VS. | CJIS TRACKING NO.: **9003170754-A001** |
| **DAVID RENE BALDERAS** | SPN: __00406242/994__   BY: NJC   DA NO: 699 |
| 16706 CARBRIDGE | DOB: wm 7-4-64   AGENCY: HPD |
| HOUSTON, TX | DATE PREPARED: 2/5/97   O/R NO: 1548097D |
| | ARREST DATE: 2-4-97 |
| NCIC CODE: 3562 20 | RELATED CASES:   CO-DEF: P. GARCIA (2FEl) |
| FELONY CHARGE: | |
| POSSESSION OF MARIHUANA | |
| CAUSE NO: __744292__ | BAIL: $ ~~1,200,000.~~ 20,000.00 |
| HARRIS COUNTY | PRIOR CAUSE NO: |
| DISTRICT COURT NO: __339__ | |

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, **DAVID RENE BALDERAS**, hereafter styled the Defendant, on or about **FEBRUARY 4, 1997,** did then and there unlawfully, intentionally and knowingly possess marihuana in a useable quantity of more than fifty pounds and less than two thousand pounds.

FOREMAN 228th

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

_Elvira Hayes_

FOREMAN OF THE GRAND JURY

## INDICTMENT (STATE'S COPY)



THE STATE OF TEXAS
VS.
**DAVID RENE BALDERAS**
16706 CARBRIDGE
HOUSTON, TX

NCIC CODE: 3562 20
FELONY CHARGE:
    POSSESSION OF MARIHUANA
CAUSE NO: 744292
HARRIS COUNTY
DISTRICT COURT NO: ____339____

D.A. LOG NUMBER: **331506**
CJIS TRACKING NO.: **9003170754-A001**
SPN:  00406242/994          BY: NJC    DA NO: 699
DOB: wm 7-4-64                 AGENCY: HPD
DATE PREPARED: 2/5/97          O/R NO: 1548097D
                               ARREST DATE: 2-4-97
RELATED CASES:   CO-DEF: P. GARCIA (2FEl)

BAIL: $ 1,200,000.
PRIOR CAUSE NO:

---

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

Comes now the undersigned Assistant District Attorney of Harris County, Texas, in behalf of the State of Texas, and presents in and to the District Court of Harris County, Texas, that in Harris County, Texas, **DAVID RENE BALDERAS**, hereafter styled the Defendant, on or about **FEBRUARY 4, 1997**, did then and there unlawfully, intentionally and knowingly possess marihuana in a useable quantity of more than fifty pounds and less than two thousand pounds.

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

_____
ASSISTANT DISTRICT ATTORNEY          BAR CARD NO.
OF HARRIS COUNTY, TEXAS

**INFORMATION**

 

| | |
|---|---|
| THE STATE OF TEXAS | D.A. LOG NUMBER: **331506** |
| VS. | CJIS TRACKING NO.: **9003170754-A001** |
| **DAVID RENE BALDERAS** | SPN:  00406242/994        BY: NJC     DA NO: 699 |
| 16706 CARBRIDGE | DOB: wm 7-4-64        AGENCY: HPD |
| HOUSTON, TX | DATE PREPARED: 2/5/97     O/R NO: 1548097D |
| | ARREST DATE: 2-4-97 |
| NCIC CODE: 3562 20 | RELATED CASES:   CO-DEF: P. GARCIA (2FEl) |
| FELONY CHARGE: | |
|   POSSESSION OF MARIHUANA | |
| CAUSE NO: 744292 | |
| HARRIS COUNTY | BAIL: $ 1,200,000. |
| DISTRICT COURT NO: 339 | PRIOR CAUSE NO: |

---

## WAIVER OF CONSTITUTIONAL RIGHTS, AGREEMENT TO STIPULATE, AND JUDICIAL CONFESSION

In open court and prior to entering my plea, I waive the right of trial by jury.  I also waive the appearance, confrontation, and cross-examination of witnesses, and my right against self-incrimination.  The charges against me allege that in Harris County, Texas, **DAVID RENE BALDERAS**, hereafter styled the Defendant, on or about **FEBRUARY 4, 1997**, did then and there unlawfully, intentionally and knowingly possess marihuana in a useable quantity of more than fifty pounds and less than two thousand pounds.

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

I understand the above allegations and I confess that they are true and that the acts alleged above were committed on

_____

    In open court I consent to the oral and written stipulation of evidence in this case and to the introduction of affidavits, written statements, of witnesses, and other documentary evidence.  I am satisfied that the attorney representing me today in court has properly represented me and I have fully discussed this case with him.

I intend to enter a plea of guilty and the prosecutor will recommend that my punishment should be set at
_____and I
agree to that recommendation.  I waive any further time to prepare for trial to which I or my attorney may be entitled.


                                    _____

                                      **DEFENDANT**

Sworn to and Subscribed before me on _____


                                    _____

                            **HARRIS COUNTY DEPUTY DISTRICT CLERK**

I represent the defendant in this case and I believe that this document was executed by him knowingly and voluntarily and after I fully discussed it and its consequences with him.  I believe that he is competent to stand trial. I agree to the prosecutors recommendation as to punishment.  I waive any further time to prepare for trial to which I or the defendant may be entitled.


_____       _____
**DEFENDANT'S ATTORNEY (PRINT)**          **SIGNATURE OF DEFENDANT'S ATTORNEY**

    I consent to and approve the above waiver of trial by jury and stipulation of evidence


                                    _____

                              **ASSISTANT DISTRICT ATTORNEY**
                              **OF HARRIS COUNTY, TEXAS**

This document was executed by the defendant, his attorney, and the attorney representing the State, and then filed with the papers of the case.  The defendant then came before me and I approved the above and the defendant entered a plea of guilty.  After I admonished the defendant of the consequences of his plea, I ascertained that he entered it knowingly and voluntarily after discussing the case with his attorney.  It appears that the defendant is mentally competent and the plea is free and voluntary.  I find that the defendant's attorney is competent and has effectively represented the defendant in this case.  I informed the defendant that I would not exceed the agreed recommendation as to punishment.


                                    _____

                                    **JUDGE PRESIDING**

**PLEA OF GUILTY**

OFFENSE: _POCh_         CAUSE NO: _744292_

THE STATE OF TEXAS                  IN THE _351_ DISTRICT COURT
                                    IN COUNTY CRIMINAL COURT AT LAW NO. _____

VS.

_David Caldeias_                              OF
                                    HARRIS COUNTY, TEXAS

## MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the State of Texas, by and through her District Attorney, and respectfully requests the Court to dismiss the above entitled and numbered criminal action for the following reason:

- ☐ The Defendant was convicted in another case.
- ☐ In custody elsewhere.
- ☐ Old case, no arrest.
- ☐ Missing witness.
- ☐ Request of complaining witness.
- ☐ Motion to suppress granted.
- ☐ Co-Defendant tried; this Defendant testify.
- ☐ Insufficient evidence.
- ☐ Co-Defendant convicted, insufficient evidence this Defendant.
- ☐ Case refiled as cause no. _____
- ☐ Other.

EXPLANATION:

WHEREFORE, PREMISES CONSIDERED, it is requested that the above entitled and numbered cause be dismissed.

Respectfully submitted,

_____
Assistant District Attorney
Harris County, Texas

### ORDER

The foregoing motion having been presented to me on this the _9th_ day of _May_, A.D. 19_97_ and the same having been considered, it is, therefore, ORDERED, ADJUDGED, and DECREED that said above entitled and numbered cause be and the same is hereby dismissed.

_____
JUDGE
_339_ DISTRICT COURT
COUNTY CRIMINAL COURT AT LAW NO. _____
HARRIS COUNTY, TEXAS

11-147

White - Original          Yellow - Defendant's Copy          Pink - State's Copy

```
REPORT: DIM601          JUSTICE INFORMATION MANAGEMENT SYSTEM          TIME:  12:44
DATE: 02/05/97          D. ⬤  INTAKE MANAGEMENT SYSTEM⬤
                             DEFENDANT DESCRIPTORS


TRANSACTION #.: 331498                    D.A. LOG #: 331506
IN CUSTODY....: Y                      ID BY PRINTS: Y
DATE OF ARREST: 02/04/1997             TIME OF ARREST: 1925

SPN.........: 00406242
AFIS NUMBER...: 674040068444
DEFENDANT NAME: BALDERAS, DAVID RENE
ALIAS NAME....:
ALIAS SPN.....:

US CITIZEN....: Y                    INS#:
PLACE OF BIRTH: TX         CITY OF BIRTH: HOU
RACE..........: W        SEX: M          DOB: 07/04/1964
MARITAL STATUS: MA     BUILD: MED     HEIGHT: 505          WEIGHT: 175
HAIR..........: BLK     SKIN: MBR       EYES: BRO
SCARS.........:

STREET ADDRESS: 16706 CARBRIDGE
CITY..........: HOU, TX                      ZIP:
PHONE.........: (713) 855 - 6703

PRIOR ARREST?: Y            FBI#: ████████        STATE ID #: TX02939745
AGENCY ID #..: HPD 365936   SSN: ██████████           SO#: 213924
ALIAS SPN(S).:
DL#..........: ████████     DL ST: TX

EMPLOYER.............: NONE


CO-DEFENDANTS?    YES
    GARCIA, PETE

DOES THE DEFENDANT HAVE A SPN?     Y       N
```

```
PRINTED: 02/05/97  12:44  (BUGAJ, JACKIE DALE)  DIM601
```

```
REPORT: DIM601        JUSTICE INFORMATION MANAGEMENT SYSTEM        PAGE:      1
DATE: 02/05/1997            D.A. INTAKE MANAGEMENT SYSTEM          TIME:  12:44
                             PROBABLE CAUSE INFORMATION
```

TRANSACTION NUMBER: 331498              DA LOG NUMBER: 331506

DISTRICT ATTORNEY.: COTTON, TROY A      DA SPN: 0699          *Co-∆*

IN CUSTODY: Y          TOTAL # OF CHARGES:    1

DEFENDANT: BALDERAS, DAVID RENE

RACE: W   SEX: M   DOB: 07/04/1964   SPN: 00406242   AFIS # 674040068444

ADDRESS: 16706 CARBRIDGE
CITY...: HOU, TX                              ZIP:
PHONE..: (713) 855-6703

CO-DEFENDANT: PETE GARCIA

DATE OF ARREST: 02/04/1997              ARREST TIME: 1925

POLICE AGENCY.: HOUSTON POLICE DEPARTMENT     OFFICER PHONE: (713) 235-0220
OFFICER NAME..: BRADLEY, RM                   BADGE NUMBER.: 2147
PAYROLL NUMBER: 76750                         FAX NUMBER...:
BEEPER NUMBER.: (713) 763-5351                FAX LOCATION.:

CHARGE(1): POM                 FELONY        BOND AMOUNT: *$1,200,000-*

*(76)*

```
    CJIS TRACKING #...: 9003170754-A001
    OFFENSE REPORT #..: 1548097 D   HPD
    DATE OF OFFENSE...: 02/04/1997
    ADDRESS OF OFFENSE: 1400 FRANKLIN
    OFFENSE CITY......: HOU, TX                ZIP:

    DRUG OFFENSE: POSSESS/CONCEAL
    DRUG TYPE...: MARIHUANA
    DRUG AMOUNT.: 200 LBS < 2000 LBS
```

COMPLAINANT/WITNESS(1):  STATE OF TEXAS

DAMAGE/RESTITUTION:

TOTAL RESTITUTION (AMOUNT OF DAMAGE):          $.00

   DESCRIPTION OF PROPERTY                                     VALUE

---

```
********************************************************
*                                                      *
*   NCIC CHECK:      CLEAR:    ATTACHED:         *
*                                                      *
*   JIMS CHECK:      CLEAR:    ATTACHED:         *
*                                                      *
********************************************************
```

2-4-97                      7:30P                    1400 Franklin

SUMMARY OF FACTS:
   OFFS FROM HPD NARCOTICS AND DEA RECEIVED INFORMATION THAT THE DEFS WERE
   TRAFFICKING IN MARIJUANA.  THE OFFS AND AGENTS ESTABLISHED SURVEILLANCE ON
   THE DEF GARCIAS HOME.  THE DEF GARCIA WAS OBSERVED ARRIVING AT THE HOUSE IN
   A BLUE GRAND AM.  THE DEF GARCIA WAS OBSERVED MAKING 4 TRIPS FROM THE GA-
   RAGE TO THE CAR.  EACH TRIP THE DEF GARCIA CARRIED A LARGE BLACK GARBAGE
   BAG AND PLACED IN IN THE TRUNK OF THE CAR.  THE DEF BALDERAS ARRIVED AND
   BOTH DEFS DEPARTED TOGETHER IN THE GRAND AM WITH THE DEF BALDERAS DRIVING.
   THE DEF BALDERAS DROVE THROUGH THE NEIGHBORHOOD MAKING NUMEROUS TURNS.  THE
   DEF THEN ENTERED THE FREEWAY GOING SOUTHBOUND AND WAS MAKING NUMEROUS LANE
   CHANGES.  THE DEF THEN CUT ACROSS 4 LANES OF TRAFFIC IN A VERY ABRUPT MAN-
   NER TO ENTER I-10.  THE DEF, WHO WAS DRIVING IN ACCESS OF 75 MILES PER HOUR
   THE  ABRUPTLY EXITED THE FREEWAY INTO THE DOWNTOWN AREA.  THE MANNER IN
   IN WHICH THE DEF WAS DRIVING WAS INDICATIVE OF WHAT IS TERMED HEAT RUNS,
   WHICH ARE EVASIVE AND DETECTION ACTIONS TAKEN BY SOMEONE, WHO IS ATTEMPTING
   TO DETERMINE IF THEY ARE BEING FOLLOWED.  THE DEFS WERE STOPPED BY MARKED
   AFTROL UNITS FOR SPEEDING AND OTHER TRAFFIC VIOLATIONS.  THE DEFS WERE AD-
   VISED OF THE THEIR LEGAL WARNING BY AGENTS FROM THE DEA.  THE DEF GARCIA
   CLAIMED OWNERSHIP OF THE CAR AND WAS PRESENTED WITH A CONSENT TO SEARCH
   FORM FOR THE VEHICLE AND HIS HOME.  THE DEF VOLUNTARILY SIGNED THE FORMS
   AND STATED THAT THE CAR CONTAINED APPROX 200 LBS OF MARIJUANA AND THAT HE
   HAD ANOTHER 60 LBS AT THE HOUSE.  THE DEF BALDERAS STATED THAT HE HAD SET
   UP THE MARIJUANA DEAL AND THAT THE BUYERS WERE WAITING IN THE HOBBY AIRPORT
   AREA WITH THE MONEY.  THE OFFICERS AND AGENTS WENT TO THE DEF GARCIAS HOME
   AND HE DIRECTED THE AGENTS TO THE REMAINING MARIJUANA AND THE 143 GRAMS OF
   COCAINE, WHICH FIELD TESTED POSITIVE.  THE DEF BALDERAS DIRECTED THE OFFS
   TO THE LOCATION OF THE BUYERS, WHERE A LARGE QUANTITY OF US CURRENCY WAS
   SEIZED.
   THE MARIJUANA WEIGHED APPROX 279 LBS WITH A STREET VALUE OF $627,750.00
   THE COCAINE WEIGHED APPROX 143 GRAMS WITH A STREET VALUE OF $14,300.00

Lab - Marihuana 272.1 lbs
Cocaine (Garcia) 109.1 gr

METHOD OF IDENTIFICATION:
    ARRESTED DURING COURSE OF OFFENSE

CURRENT INFORMATION REPORT NON-PUBLIC

HOUSTON POLICE DEPARTMENT PAGE 1.001
CURRENT INFORMATION REPORT Incident no. 015938097 0

Offense- POSS MARIJUANA (FEL)/MARIJU,HASH
UCR Offense codes- 18111/00000/00000
Premises- ROAD/STREET/SIDEWALK Weather- COOL

Location: Street no- 001400 Name- FRANKLIN
City-HOUSTON County-HARRIS Kmap-493M Dist- 1 Beat- 1A10
Neighborhood code-00701 Desc-DOWNTOWN BUSINESS DISTRICT

Begin date- TU 02/04/97 Time- 1920 End date- / / Time-
Received/Employee: Name-LAPTOP No.-000000 Date-02/12/97 Time-1124
Gang crime related-N Hate crime related-N

---

COMPLAINANT(S)

No-01 Business name-STATE OF TEXAS
Address-61 RIESNER;HOUSTON,TX
Phone: Home-(000) 000-0000 Business-(713) 250-0220 Ext-
Force used against complainant- N

---

WITNESS(S)

NONE

---

REPORTEE(S)

NONE

---

VEHICLE(S)

No- 01 Type-GENERAL Complainant no- Disposition-PRISONER
Yr-87- Make-PONTIAC Model- GRAND AM Style-CAR 2-DOOR
License: No-RKL02D State-TX Year-97 Month-04 Type-CAR
VIN-1G2NE14U0HC002307 Colors: 1st-GREEN 2nd-
Recovery: Location- Dist-00 Beat-00 00
HCIC misc-TOWED TO 2104 LYONS

---

ARTICLES

No- 01 Disposition-EVIDENCE Property tag no-0-0000-00 Complainant no-00
Item type-NARCOTICS UCR class-00
Description-BAG #1 CONTAINING NUMEROUS BRICKS OF PLANT SUBSTANCE. APPROX 52.5 LBS.
Recovery date-02/04/97 Recovery value-$ 0.00

INCIDENT No. 01-162077 D   CONCISE INFORMATION REPORT                                    PAGE 1.002

No.    02 Disposition=EVIDENCE    Property bag no=0-0000-00 Complainant no=00
       Item type=NARCOTICS                   UCR class=00
Description=BAG 02 CONTAINING NUMEROUS BRICKS OF PLANT SUBSTANCE.  APPROX 49.0
LBS.
       Recovery date=02/04/97 Recovery value=$        0.00

No.    03 Disposition=EVIDENCE    Property bag no=0-0000-00 Complainant no=00
       Item type=NARCOTICS                   UCR class=00
Description=BAG 03 CONTAINING NUMEROUS BRICKS OF PLANT SUBSTANCE.  APPROX 37.0
LBS.
       Recovery date=02/04/97 Recovery value=$        0.00

No.    04 Disposition=EVIDENCE    Property bag no=0-0000-00 Complainant no=00
       Item type=NARCOTICS                   UCR class=00
Description=BAG 04 CONTAINING NUMEROUS BRICKS OF PLANT SUBSTANCE.  APPROX 36
LBS.
       Recovery date=02/04/97 Recovery value=$        0.00

No.    05 Disposition=EVIDENCE    Property bag no=0-0000-00 Complainant no=00
       Item type=NARCOTICS                   UCR class=00
Description=BAG 05 CONTAINING ONE BRICK OF PLANT SUBSTANCE.  APPROX 1.0 LBS.
       Recovery date=02/04/97 Recovery value=$        0.00

No.    06 Disposition=EVIDENCE    Property bag no=0-0000-00 Complainant no=00
       Item type=NARCOTICS                   UCR class=00
Description=BAG 06 CONTAINING ONE BRICK OF PLANT SUBSTANCE.  APPROX 1.0 LBS.
       Recovery date=02/04/97 Recovery value=$        0.00

No.    07 Disposition=EVIDENCE    Property bag no=0-0000-00 Complainant no=00
       Item type=NARCOTICS                   UCR class=00
Description=BAG CONTAINING LOOSE PLANT SUBSTANCE.  APPROX 7 LBS.
       Recovery date=02/04/97 Recovery value=$        0.00

No.    08 Disposition=EVIDENCE    Property bag no=0-0000-00 Complainant no=00
       Item type=NARCOTICS                   UCR class=00
Description=WHIN FINDS TWO PLANT SUBSTANCE RESIDUES.
       Recovery date=02/04/97 Recovery value=$        0.00

No.    09 Disposition=EVIDENCE    Property bag no=0-0000-00 Complainant no=00
       Item type=NARCOTICS                   UCR class=00
Description=BAG CONTAINING PLANT SUBSTANCE.  APPROX 7.87 GRAMS.
       Recovery date=02/04/97 Recovery value=$        0.00

No.    10 Disposition=EVIDENCE    Property bag no=0-0000-00 Complainant no=00
       Item type=NARCOTICS                   UCR class=00
Description=BAG CONTAINING PLANT SUBSTANCE.  APPROX 113.7 GRAMS.
       Recovery date=02/04/97 Recovery value=$        0.00

No.    11 Disposition=EVIDENCE    Property bag no=0-0000-00 Complainant no=00
       Item type=NARCOTICS                   UCR class=00
Description=BAG CONTAINING PLANT SUBSTANCE.  APPROX 308.7 GRAMS.
       Recovery date=02/04/97 Recovery value=$        0.00

Incident no. 0134080?? D CURRENT INFORMATION REPORT                    PAGE 1.003

No-    12 Disposition-EVIDENCE    Property tag no-0-0000-00 Complainant no-00
       Item type-NARCOTICS              UCR class-00
Description-BAG CONTAINING WHITE POWDER SUBSTANCE.   APPROX 143.3 GRAMS.
       Recovery date-02/04/97 Recovery value-$      0.00

No-    13 Disposition-EVIDENCE    Property tag no-0-0000-00 Complainant no-00
       Item type-NARCOTICS              UCR class-00
Description-BAG CONTAINING 3 INDIVIDUAL BAGS OF PLANT SUBSTANCE.   APPROX 72
GRAMS.
       Recovery date-02/04/97 Recovery value-$      0.00

No-    14 Disposition-EVIDENCE    Property tag no-0-0000-00 Complainant no-00
       Item type-NARCOTICS              UCR class-00
Description-BAG CONTAINING PLANT SUBSTANCE.   APPROX 26.9 GRAMS.
       Recovery date-02/04/97 Recovery value-$      0.00

No-    15 Disposition-EVIDENCE    Property tag no-0-0000-00 Complainant no-00
       Item type-FILM                   UCR class-00
Description-ONE ROLL OF 35MM FILM.   SCENE PHOTOS.
       Recovery date-02/04/97 Recovery value-$      0.00

                    DETAILS OF OFFENSE

MINOR OFFENSE 1-POSS CONTROL SUBS (FEL) / COCAINE

                    SYNOPSIS
OFFICERS FROM HPD AND DEA CONDUCTED A NARCOTICS INVESTIGATION, WHICH RESULTED
IN THE SEIZURE OF MARIJUANA, COCAINE AND CASH.   THE ARRESTS OF NUMEROUS
SUBJECTS AND MULTIPLE CHARGES.

Officer#1 Name-BRADLEY                     Employee no-0/0?00 Shift-3
Officer#2 Name-BOYLE                       Employee no-083090 Shift-

Division/Station #-NARCOTICS       Unit #-8702

Call received: Date-02/04/97 Time-1920 Report made: Date-02/12/97 Time-1128

                    END OF PAGE ONE

```
//////////////////////////////////////////////////////////////////////////
                  ORIGINAL INFORMATION REPORT NON-PUBLIC
//////////////////////////////////////////////////////////////////////////
                  HOUSTON POLICE DEPARTMENT              PAGE 1.001
                      OFFENSE REPORT          Incident no. 013458097 0
//////////////////////////////////////////////////////////////////////////
```

SUPPLEMENT(S)

No-0001

Offense- POSS MARIJUANA (FEL)/MARIJU,HASH
                    Street location information
Number-    1400 Name-FRANKLIN             Type-        Suffix-
Apt no-      Name-AUSTIN                   Type-       Suffix-
Date of offense-02/04/97          Date of supplement-02/13/97
Compl(s) Last-STATE OF TEXAS   First-       Middle-
          Last-
                  Recovered stolen vehicles information
 Stored-                    by-               Ph#- (000) 000-0000
Officer1-SNOWMAN                Emp#-102193 Shift-  Div/Station-CRIME LAB

                    SUPPLEMENT NARRATIVE

SUSPECT(S): TIMOTHY K. ROBERTSON              REF:L97-1488
                                    CRIMINALIST:SNOWMAN

                        EVIDENCE SUBMITTED
____CONTAINER(S) CHUNK SUBSTANCE   ____CIGARETTE(S)      ____TABLET(S)
____CONTAINER(S) POWDER            ____CIGARETTE STUB(S) ____CAPSULE(S)
_1__CONTAINER(S) PLANT SUBSTANCE   ____CIGAR(S)          ____PIPE(S)
____CONTAINER(S) LIQUID            ____CIGAR STUB(S)     ____SYRINGE(S)
____OTHER:

                      RESULTS OF ANALYSIS

MARIHUANA - APPROXIMATELY 2.7 OUNCES


Supplement entered by - 102193
Report reviewed by-GF               Employee number-103/50
Date cleared- 02/04/97

--------------------------------------------------------------------------

No-0002

Offense- POSS MARIJUANA (FEL)/MARIJU,HASH
                    Street location information
Number-    1400 Name-FRANKLIN             Type-        Suffix-
Apt no-      Name-AUSTIN                   Type-       Suffix-
Date of offense-02/04/97          Date of supplement-02/24/97
Compl(s) Last-STATE OF TEXAS   First-       Middle-
          Last-
                  Recovered stolen vehicles information
 Stored-                    by-               Ph#- (000) 000-0000
Officer1-K. SNOWMAN             Emp#-102193 Shift-1 Div/Station-CRIME LAB
```

```
mmmmm//////mmmm//mmm//////mmmm//mmmm//////mm//mm/////mm//mmm//////mmmm//mmmm
Incident no. 015458097 D        OFFENSE REPORT                      PAGE 1.002
mmmmm//////mmmm//mmm//////mmmm//mmmm//////mm//mm/////mm//mmm//////mmmm//mmmm
```

SUPPLEMENT NARRATIVE

SUSPECT (S): PETE GARCIA    06-25-64         REF: L 97-1489
             DAVID R. BALDARAS, 07-04-64

EVIDENCE SUBMITTED BY J.J. REYES     PR# 43126   DATE: 02-04-97

EVIDENCE SUBMITTED
        (1) CONTAINER (S) POWDER          (1) CIGARETTE (S)
        (13) CONTAINER (S) PLANT SUBSTANCE    (7) CIGARETT STUB (S)
        (X) OTHER 2 ITEMS WITH RESIDUE, SUITCASE, 5 BAGS, 1 WRAPPER

RESULTS OF ANALYSIS:


COCAINE- APPROXIMATELY 109.1 GRAMS OF 49.7 % (POWDER)
MARIJUANA- APPROXIMATLEY 272.1 POUNDS (125.7 KILOGRAMS, REMAINING EVIDENCE)

THE 5 BAGS AND WRAPPER WERE TRANSFERRED TO LATENT LAB EXAMINER SMITH, PR#8/541
ON FEBRUARY 11, 1997.

THE SUITCASE WILL BE TRANSFERRED TO THE PROPERTY ROOM.

EBY/LESLIE


Supplement entered by - 98/08
Report reviewed by-MT                  Employee number-060965
Date cleared- 02/04/97

                        END OF PAGE TWO

Subject(s)

No-01 Disposition=ARRESTED /CHARGED    APD-no=465736
        Name: Last=BALDERAS        First=DAVID      Middle=RENE
        Address=16700  LANGKIOSE/HOUSTON,TX
        Race=W Sex=M Age=43-00 Hispanic=N Date of birth=07/04/64
        Height=505 Tot   Weight=170 Tot
        Hair Color =BLACK      Type=STRAIGHT    Length=LONG
        Complexion=M BROWN     Facial hair=     MUSTACHE
        Speech/Accent=ENGLISH/HISPANIC      Eye color=BROWN
DRESS=SHIRT FOLLOW'S BLUE/JEANS BLU
Attr=TDL #[redacted]/SS #[redacted]/CHARGE# POM/CAUSE# 744292/COURT# 339DC/BOND#
$3,200,000.00

No-02 Disposition=ARRESTED /CHARGED    APD-no=467177
        Name: Last=GARCIA        First=PETE       Middle=
        Address=7760 WALLAINUS/HOUSTON,TX
        Race=W Sex=M Age=32-00 Hispanic=N Date of birth=06/23/64
        Height=506 Tot   Weight=180 Tot
        Hair Color=BLACK      Type=          Length=MEDIUM
        Complexion=M BROWN     Facial hair=     MUSTACHE
        Speech/Accent=ENGLISH/HISPANIC      Eye color=BROWN
DRESS=SHIRT FOLLOW'S BLK/JEANS BLU
Attr=TDL #[redacted]/SS #[redacted]/CHARGE# POM/POS/CAUSE# 744290/744291/COURT#
337DC/BOND# $1,200,000.00

No-03 Disposition=ARRESTED /RELEASED    APD-no=XXXXX
        Name: Last=BERGER        First=GREGORY     Middle=ALAN
        Address=7777 EMBAUT
        Address=13727 GALVESTON RD/HOUSTON,TX
        Race=W Sex=M Age=24-00 Hispanic=N Date of birth=02/07/XX
        Height=503 Tot   Weight=170 Tot
        Hair Color=BROWN      Type=          Length=Short
        Complexion=LIGHT     Facial hair=
        Speech/Accent=ENGLISH       Eye color=
Attr=SS #[redacted]/TDL #[redacted]      No charges

No-04 Disposition=ARRESTED /RELEASED    APD-no=XXXXX
        Name: Last=LOPEZ        First=MARTHA     Middle=MARKS
        Address=13727 GALVI RDLLOW RD/HOUSTON,TX
        Race=W SEX=M Age=26-00 Hispanic=N Date of birth=06/XX/XX
        Height=504 Tot   Weight=170 Tot
        Hair Color=BROWN      Type=          Length=
        Complexion=L Brown     Facial hair=
        Speech/Accent=ENGLISH/Hispanic      Eye color=BROWN
Attr=SS #[redacted]/SS #[redacted]      No charges

No-05 Disposition-[illegible] HPD-no-000000
Name: Last-[illegible] First-REFUGIO Middle-[illegible]
Address-[illegible] HOUSTON,
Race-W Sex-M Age-[illegible] Hispanic-H Date of Birth-[illegible]
Height-[illegible] to- Weight-[illegible] to-
Hair: Color-BLACK Type- Length-SHORT
Complexion-M BROWN Facial hair-
Speech/Accent-ENGLISH/SPANISH Eye Color-BROWN
Misc-ID: [redacted]/SS #[redacted] NO CHARGES

No-06 Disposition-ARRESTED /RELEASED HPD-no-000000
Name: Last-ROBERTSON First-TIMOTHY Middle-KEITH
Address-7300 DAYTON/HOUSTON,
Race-W Sex-M Age-[illegible] Hispanic-N Date of Birth-[illegible]
Height-[illegible] to- Weight-[illegible] to-
Hair: Color-BROWN Type- Length-
Complexion- Facial hair- MUSTACHE AND BEARD
Speech/Accent-ENGLISH Eye Color-GREEN
Misc-ID: [redacted] NO CHARGES

---

[illegible] SUMMARY

Report entered by-[illegible] Employee Number-[illegible]

Status: Open- Clearance Inactive- Unfounded-
Report Reviewed by- Employee Number-[illegible]
Date Reviewed-[illegible]

---

NARRATIVE

INTRODUCTION

OFFICERS [illegible] AND [illegible], WHO ARE ASSIGNED TO THE NARCOTICS DIVISION, WERE CONTACTED BY [illegible] ABOUT [illegible] OF THE [illegible] IN REGARDS TO AN ON-GOING NARCOTICS INVESTIGATION.

THE OFFICERS AND THE AGENTS HAD RECEIVED INFORMATION REGARDING THE [illegible] TRAFFICKING ACTIVITIES OF THE SUSPECTS [illegible] AND [illegible] IN NOVEMBER [illegible]. THE OFFICERS AND THE AGENTS HAVE SURVEILLED THE SUSPECTS ON NUMEROUS OCCASIONS SINCE FIRST RECEIVING THE INFORMATION.

SCENE SUMMARY

SCENE #1

THE TRAFFIC STOP WAS DONE IN THE [illegible] BLOCK OF FRANKLIN, HOUSTON, HARRIS COUNTY, TEXAS.

INCIDENT NO. 0181339Y7 O  CURRENT INFORMATION REPORT                    PAGE 2.006

THE TIME OF THE DAY WAS APPROX 1930 HRS.  THE LIGHTING WAS PROVIDED BY ARTI-
FICIAL MEANS.  THE WEATHER WAS WARM AND DRY.

                              SCENE #2

THE CONSENT TO SEARCH OF THE SUSPECT GARCIAS' HOME WAS DONE AT 928 WALLING,
HOUSTON, HARRIS COUNTY, TEXAS.

THIS SEARCH WAS COMPLETED BY THE AGENTS OF THE DEA.  THE HOUSE WAS FOUND TO BE
A TWO BEDROOM HOUSE WITH A GARAGE.

THE TIME WAS APPROX 2100 HRS.

                              SCENE #3

THE CONSENT TO SEARCH OF THE SUSPECT ROBERTSONS' HOME WAS AT 7390 GAYION,
HOUSTON, HARRIS COUNTY, TEXAS.

THE SEARCH WAS COMPLETED BY HPD NARCOTICS OFFICERS AND AGENTS OF THE DEA AND
PASADENA NARCOTICS OFFICERS.

THE HOUSE WAS FOUND TO BE A THREE BEDROOM, TWO BATHROOM STRUCTURE WITH A
DETACHED GARAGE.

THE TIME WAS APPROX 2000 HRS.

                          DETAILS OF OFFENSE

020377 MONDAY.

SGT. ROBERTSON ADVISED THE OFFICERS THAT SUSPECTS STABLINGS AND GARCIA, WHO THE
OFFICERS AND THE AGENTS HAVE SURVEILLED ON PREVIOUS OCCASIONS, WERE SHOWING
ACTIVITY AND THE AGENT REQUESTED THE OFFICERS ASSISTANCE TO FOLLOW THE SUSPECTS.

THE OFFICERS MET WITH AGENTS OF THE DEA NEAR THE HOME OF SUSPECT GARCIA (928
WALLING) AND ESTABLISHED SURVEILLANCE ON THE SUSPECT GARCIA AND THE SUSPECT
STABLINGS, WHO WAS AT THE LOCATION.

DURING THE COURSE OF THE SURVEILLANCE THE OFFICERS AND THE AGENTS LOST THE
SUSPECTS WHEN THEY DEPARTED THE LOCATION AND THE SURVEILLANCE WAS DISCONTINUED.

020477 TUESDAY.

APPROX 1430 HRS:

SURVEILLANCE WAS RE-ESTABLISHED AT THE SUSPECT GARCIAS' HOME (928 WALLING).

APPROX 1530 HRS:

THE SUSPECT PETE GARCIA ARRIVES AT THE HOUSE DRIVING THE GRAND AM.  THE SUSPECT
IS ALONE.

Incident No. 015436077 D CURRENT INFORMATION REPORT                    PAGE 2.002

APPROX 1845 HRS:

THE SUSPECT GARCIA IS OBSERVED CARRYING NUMEROUS BLACK PLASTIC BAGS OUT OF THE
HOUSE AND PLACING THEM INTO THE TRUNK OF THE GRAND AM.  THE BAGS ARE BULKY AND
HEAVY.
APPROX 1900 HRS:

THE SUSPECT BALDERAS ARRIVES AT THE WALLING LOCATION.

APPROX 1910 HRS:

THE SUSPECTS GARCIA AND BALDERAS ENTER THE GRAND AM AND DEPART THE LOCATION.
THE SUSPECT BALDERAS WAS DRIVING AND THE SUSPECT GARCIA WAS THE PASSENGER.

THE SUSPECTS PROCEEDED THROUGH THE RESIDENTIAL NEIGHBORHOOD AVOIDING THE MAIN
THOROUGHFARES.  THIS IS ALSO A COMMON PRACTICE OF TRAFFICKERS TO DETECT
SURVEILLANCE.

THE SUSPECTS EVENTUALLY ENTERED THE NORTH FREEWAY GOING SOUTHBOUND.  THE
SUSPECTS MADE NUMEROUS LANE CHANGES AND CUT ACROSS THREE LANES OF TRAFFIC TO
ENTER THE EAST FREEWAY GOING EASTBOUND.  THE SUSPECTS WERE SPEEDING IN EXCESS OF
70 MPH IN A POSTED 60 MPH SPEED ZONE.

APPROX 1920 HRS:

THE SUSPECTS WERE STOPPED BY MARKED PATROL UNITS FOR THE TRAFFIC VIOLATIONS
COMMITTED BY THE SUSPECT BALDERAS.

THE SUSPECTS WERE DETAINED AND REMOVED BY THE NARCOTICS INVESTIGATORS.  THE
SUSPECT GARCIA WAS ADVISED OF HIS LEGAL RIGHTS BY OFFICER OWEN AND THE SUSPECT WAS
ASKED BY THE OFFICER BRADLEY TO SIGN AND THE SUSPECT STATES THAT THE VEHICLE WAS
HIS AND HE IS PRESENTED A CONSENT TO SEARCH FORM FOR HIS VEHICLE AND SIGNS IT BY.
ALSO OWEN.  THE SUSPECT GARCIA VOLUNTARILY SIGNS THE FORMS AND FREELY ADMITS THAT
THERE IS 60 KILOS 600 LBS OF MARIJUANA IN THE TRUNK OF THE CAR HE APPROX 60 LBS
WORTH IN THE TRUNK.

THE SUSPECT BALDERAS AFTER BEING MADE AWARE OF HIS LEGAL RIGHTS STATES TO OFF.
OWEN THAT THE MARIJUANA IN THE TRUNK BELONGED TO HIM AND THAT HE HAD BET OF THE
DEAL AND THAT THE SUSPECT GARCIA WAS ONLY HELPING HIM.

THE SUSPECT BALDERAS FURTHER ADVISED THAT THE BUYERS FOR THE MARIJUANA WERE
WAITING AT A PRIVATE RESIDENCE IN THE HOBBY AIRPORT AREA.  THE SUSPECT BALDERAS
ASSISTED THE OFFICERS AND AGENTS IN FURTHERING THE INVESTIGATION BY POINTING
OUT THE HOUSE THE BUYER WAS WAITING AT.  THIS HOUSE WAS FOUND TO CARRY THE
ADDRESS OF 7350 DAYTON, HOUSTON, HARRIS COUNTY, TEXAS.

ONCE THE FORM ALLOWING THE SEARCH OF THE VEHICLE WAS SIGNED OFFICER BRADLEY
OPENED THE TRUNK.  THE TRUNK WAS FOUND TO CONTAIN FOUR LARGE PLASTIC BAGS
BEARING THE CITY OF HOUSTON SEAL.  THE FOUR BAGS WERE FOUND TO CONTAIN A LARGE
QUANTITY OF COMPRESSED BRICKS OF MARIJUANA (ARTICLES 1 THROUGH 4).  THE OFFICER
ALSO FOUND ONE COMPRESSED BRICK OF MARIJUANA (ARTICLE 5).

Incident no. 0103J3097 D   CURRENT INFORMATION REPORT                    PAGE 2.006

THE AGENTS FROM THE DEA ALONG WITH A UNIFORMED PATROL UNIT AND THE SUSPECT
GARCIA THEN PROCEEDED TO 925 WALLING TO SEARCH THE HOUSE.   SEE REAL EVIDENCE
FOR DETAILS REGARDING ARTICLES 6 THROUGH 12.

OFFICER BRADLEY AND OTHER AGENTS ALONG WITH PASADENA NARCOTICS OFFICERS WENT TO
7300 CAYTON TO FURTHER THE INVESTIGATION.

ONCE AT THE CAYTON LOCATION OFFICER BRADLEY AND S/A OWEN SPOKE WITH THE OWNER
OF THE HOME, WHO WAS THE SUSPECT ROBERTSON.   THE SUSPECT WAS ADVISED OF THE
INVESTIGATION AND PRESENTED WITH A CONSENT TO SEARCH FORM FOR HIS HOME.   THE
SUSPECT ROBERTSON FREELY AND VOLUNTARILY SIGNED THE FORM.

THE SUSPECT ROBERTSON THEN DIRECTED S/A OWEN TO THE MONEY THAT WAS TO BE USED
FOR THE PURCHASE OF THE MARIJUANA.   THE AGENT WAS ALSO DIRECTED TO A SMALL
AMOUNT OF MARIJUANA (ARTICLES 13 AND 14).

OFFICER BRADLEY INTERVIEWED THE SUSPECT ROBERTSON AND THIS INTERVIEW WAS TAPE
RECORDED BUT THE TAPE FAILED TO RECORD.   THE FOLLOWING IS A SYNOPSIS OF THE
INTERVIEW, NOT VERBATIM.

THE SUSPECT ROBERTSON TOLD THE OFFICER AND S/A AGENT OWEN THAT THE SUSPECT
SENGER WAS THE BUYER OF THE MARIJUANA.   THE SUSPECT SENGER CAME TO HIM AND
ASKED FOR ASSISTANCE IN MAKING THE ARRANGEMENTS.

THE SUSPECT ROBERTSON CONTACTED THE SUSPECT LOPEZ AND TOLD HIM OF THE SUSPECT
SENGERS DESIRE TO PURCHASE THE MARIJUANA.   THE SUSPECT ROBERTSON EVENTUALLY
INTRODUCED THE SUSPECT SENGER TO THE SUSPECT LOPEZ, WHO BROUGHT THE SUSPECT
GALLARDO ALONG.

THE AGREED PRICE FOR THE MARIJUANA WAS TO BE $120,000.00 AND THAT THE SUSPECT
ROBERTSON WAS TO RECEIVE $5000.00 FOR LETTING THE BUYER AND SELLERS USE HIS
GARAGE TO COMPLETE THE TRANSACTION.   THIS PAYMENT WAS TO BE MADE TO SUSPECT
ROBERTSON BY THE SUSPECTS LOPEZ AND GALLARDO.

THE OTHER SUSPECTS WERE INTERVIEWED AT THE SCENE BUT ALL REFUSED TO MAKE ANY
STATEMENTS REGARDING THE MONEY OR THE MARIJUANA TRANSACTION.   SPECIAL NOTE THAT
OFFICER BRADLEY SPECIFICALLY ASKED SUSPECT SENGER IF THE MONEY THAT WAS BEING
SEIZED WAS HIS AND HE ONLY STATED THAT HE DIDN'T KNOW ANYTHING.

ONCE THE SEARCH OF THE HOUSE WAS COMPLETED THE SUSPECTS GALLARDO, LOPEZ AND
SENGER WERE TRANSPORTED TO THE CENTRAL JAIL UNTIL SUCH TIME IT WAS DETERMINED
THEY WERE NOT GOING TO BE FILED ON THROUGH THE DA'S OFFICE.

THE SUSPECT ROBERTSON WAS RELEASED AT THE SCENE PENDING FURTHER INVESTIGATION
BY THE DEA.

THE SUSPECTS GARCIA AND BALLARDO WERE ALSO PLACED IN THE CENTRAL JAIL FACILITY.

REAL EVIDENCE

INCIDENT NO. 01943809? DEPARTMENT INFORMATION REPORT                    PAGE 2007

## ARTICLE #1

DESCRIPTION :   PLASTIC BAG CONTAINING NUMEROUS BRICKS OF COMPRESSED MARIJUANA.
                APPROX 32.3 LBS.
RECOVERED BY:   OFFICER BRADLEY.
LOCATION    :   FROM THE TRUNK OF THE SUSPECT VEHICLE.
DISPOSITION :   TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                CRIME LAB FOR ANALYSIS.

## ARTICLE #2

DESCRIPTION :   PLASTIC BAG CONTAINING NUMEROUS BRICKS OF COMPRESSED MARIJUANA.
                APPROX 49.0 LBS.
RECOVERED BY:   OFFICER BRADLEY.
LOCATION    :   FROM THE TRUNK OF THE SUSPECT VEHICLE.
DISPOSITION :   TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                CRIME LAB FOR ANALYSIS.

## ARTICLE #3

DESCRIPTION :   PLASTIC BAG CONTAINING NUMEROUS BRICKS OF COMPRESSED MARIJUANA.
                APPROX 54.5 LBS.
RECOVERED BY:   OFFICER BRADLEY.
LOCATION    :   FROM THE TRUNK OF THE SUSPECT VEHICLE.
DISPOSITION :   TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                CRIME LAB FOR ANALYSIS.

## ARTICLE #4

DESCRIPTION :   PLASTIC BAG CONTAINING NUMEROUS BRICKS OF COMPRESSED MARIJUANA.
                APPROX 06 LBS.
RECOVERED BY:   OFFICER BRADLEY.
LOCATION    :   FROM THE TRUNK OF THE SUSPECT VEHICLE.
DISPOSITION :   TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                CRIME LAB FOR ANALYSIS.

## ARTICLE #5

DESCRIPTION :   PLASTIC BAG CONTAINING ONE BRICK OF COMPRESSED MARIJUANA.
                APPROX 1.0 LBS.
RECOVERED BY:   OFFICER BRADLEY.
LOCATION    :   FROM THE TRUNK OF THE SUSPECT VEHICLE.
DISPOSITION :   TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                CRIME LAB FOR ANALYSIS.

## ARTICLE #6

DESCRIPTION :   PLASTIC BAG CONTAINING ONE BRICK OF COMPRESSED MARIJUANA.
                APPROX 06 LBS.
RECOVERED BY:   S/A LEE.
LOCATION    :   FROM THE GARAGE OF SUSPECT GARCIA.   928 WALLING.
DISPOSITION :   TURNED OVER TO SGT. REYES, WHO SUBMITTED THE SUBSTANCE TO THE

INCIDENT NO. 91230097 D    CURRENT INVESTIGATION REPORT.            PAGE 2,019

              CRIME LAB FOR ANALYSIS.

                     ARTICLE 47

DESCRIPTION :    PLASTIC BAG CONTAINING LOOSE MARIJUANA.   APPROX 9 LBS.
RECOVERED BY:    S/A LEE.
LOCATION     :   FROM A SUITCASE, WHICH WAS IN THE SUSPECT GARCIAS' GARAGE.
                 928 WALLING.
DISPOSITION :    TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                 CRIME LAB FOR ANALYSIS.

                     ARTICLE 48

DESCRIPTION :    WRAPPINGS AND LOOSE MARIJUANA.
RECOVERED BY:    S/A LEE.
LOCATION     :   FROM INSIDE SUITCASE, WHICH WAS IN THE GARAGE.
                 928 WALLING.
DISPOSITION :    TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                 CRIME LAB FOR ANALYSIS.

                     ARTICLE 49

DESCRIPTION :    PLASTIC BAG CONTAINING MARIJUANA.   APPROX 42.4 GRAMS.
RECOVERED BY:    S/A LEE.
LOCATION     :   FROM MASTER BEDROOM NEXT TO T.V.
                 928 WALLING.
DISPOSITION :    TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                 CRIME LAB FOR ANALYSIS.

                     ARTICLE 50

DESCRIPTION :    PLASTIC BAG CONTAINING MARIJUANA.   APPROX 110.9 GRAMS.
RECOVERED BY:    S/A LEE.
LOCATION     :   FROM UNDER BED IN MASTER BEDROOM.
                 928 WALLING.
DISPOSITION :    TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                 CRIME LAB FOR ANALYSIS.

                     ARTICLE 51

DESCRIPTION :    PLASTIC BAG CONTAINING MARIJUANA.   APPROX 308.9 GRAMS.
RECOVERED BY:    S/A LEE.
LOCATION     :   FROM WEIGHT/SPARE BEDROOM.
                 928 WALLING.
DISPOSITION :    TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                 CRIME LAB FOR ANALYSIS.

                     ARTICLE 52

DESCRIPTION :    PLASTIC BAG CONTAINING COCAINE.   APPROX 142.3 GRAMS.
RECOVERED BY:    S/A LEE.
LOCATION     :   FROM SAFE IN DINING ROOM.

INCIDENT NO. 01230807? D CURRENT INFORMATION REPORT.                    PAGE 2.011

725 DALLING.
DISPOSITION :   TURNED OVER TO SGT REYES, WHO SUBMITTED THE SUBSTANCE TO THE
                CRIME LAB FOR ANALYSIS.

                            ARTICLE 113

DESCRIPTION :   PLASTIC BAG CONTAINING 3 INDIVIDUAL BAGS OF MARIJUANA.
                APPROX 72 GRAMS.
RECOVERED BY:   S/A OWEN.
LOCATION    :   FROM SMALL METAL CASE IN SUSPECT ROBERTSONS BEDROOM.
                7350 CAYTON.
DISPOSITION :   TURNED OVER TO OFFICER BRADLEY, WHO TURNED IT OVER TO SGT REYES,
                WHO SUBMITTED THE SUBSTANCE TO THE CRIME LAB FOR ANALYSIS.

                            ARTICLE 114

DESCRIPTION :   PLASTIC BAG CONTAINING MARIJUANA.  APPROX 26.9 GRAMS.
RECOVERED BY:   S/A OWEN.
LOCATION    :   FROM THE KITCHEN DRAWER.
                7350 CAYTON.
DISPOSITION :   TURNED OVER TO OFFICER BRADLEY, WHO TURNED IT OVER TO SGT REYES,
                WHO SUBMITTED THE SUBSTANCE TO THE CRIME LAB FOR ANALYSIS.

                            ARTICLE 115

DESCRIPTION :   ONE ROLL OF 35MM FILM.  PHOTOS OF THE NARCOTICS.
TAKEN BY    :   SGT REYES.
DISPOSITION :   SUBMITTED TO THE PHOTO LAB.

                            ARTICLE 116

DESCRIPTION :   $100,000.00 IN US CURRENCY.
RECOVERED BY:   S/A OWEN.
LOCATION    :   MASTER BEDROOM OF SUSPECT ROBERTSON.  7350 CAYTON.
DISPOSITION :   MAINTAINED BY DEA.

                            ARTICLE 117

DESCRIPTION :   $2,500.00 IN US CURRENCY.
RECOVERED BY:   S/A OWEN.
LOCATION    :   FROM SUSPECT CALARACA.
DISPOSITION :   MAINTAINED BY DEA.

                        OFFICE INVESTIGATION

OFFICER BRADLEY SPOKE WITH ADA COTTON REGARDING THE CASE AND ADA COTTON
ACCEPTED CHARGES ON THE SUSPECTS GARCIA AND BALDERAS.  THE OTHER THREE SUSPECTS
WERE RELEASED.

THE SUSPECTS WERE CHECKED FOR CRIMINAL HISTORIES AND ALL SUSPECTS, EXCEPT FOR
SUSPECT BERGER, HAD PRIOR ARRESTS AND CONVICTIONS.

INCIDENT NO. 010106077 0   CURRENT INFORMATION REPORT                    PAGE 2.012

OFFICER BRADLEY FILED THE CHARGES UNDER TRANSACTION NUMBER 061970.

                              SUSPECT DISPOSITION

SUSPECT  : GARCIA, PETE
CHARGE   : POM (FEL)
CHARGE   : POS (COCAINE)
CAUSE    : 744270/744271
COURT    : 339 DC
BOND     : $1,200,000.00

SUSPECT  : BALDERAS, DAVID RENE
CHARGE   : POM (FEL)
CAUSE    : 744272
COURT    : 339 DC
BOND     : $1,200,000.00

SUSPECTS: BERGER, GALARZA AND LOPEZ
CHARGE  : ALL RELEASED NO CHARGES.


       SYSTEM ADVISORY: REPORT ENTERED USING PERSONAL COMPUTER  VER-2.09
       ****************************************************************
       *  ENTRY DEVICE: ZENITH 286 106673                             *
       *  ENTRY FROM DATE-020697 TIME-1912  TO  DATE-020697 TIME-1917 *
       *  TRANSFER DEVICE: NARCO/IBC/SW PMT AST 366GX20 IOXIO4VER. 2.09-1*
       *  TRANSFER DATE-021297 TIME-1107  LOAD DATE-021297 TIME-1128  *
       *  LOCATION OF OFFENSE: POLICE DISTRICT-WASHINGTON IN    DIST-WN *
       ****************************************************************




X ARRESTED AND CHARGED IN THIS CASE (INCLUDES JUVENILES ARRESTED AND REFERRED)
_ ARRESTED AND CHARGED IN OTHER CASES (BUT NOT THIS CASE)
  EXCEPTIONAL CLEARANCES -- MUST HAVE THE FOLLOWING CONDITIONS IN NARRATIVE:
     IDENTITY OF OFFENDER IS ESTABLISHED, AND ENOUGH INFORMATION EXISTS TO
     SUPPORT AN ARREST, CHARGE, AND PROSECUTION, AND EXACT LOCATION OF THE
     OFFENDER IS KNOWN, AND THERE IS SOME REASON BEYOND LAW ENFORCEMENT CONTROL
     THAT PROHIBITS THE ARREST AND/OR CHARGING OF THE OFFENDER (MARK ONLY ONE).
     _ LACK OF PROSECUTION BY BY D. A. FOR NON-EVIDENTIARY REASON
     _ LACK OF PROSECUTION BY COMPLAINANT _ ORAL CONFESSION WITH MINIMAL EVIDENCE
     _ MINOR OFFENSE (JUVENILE ONLY)       _ DEATH OF DEFENDANT
     _ OTHER _____
_ UNFOUNDED _ INACTIVE _ CLEARED BY INVESTIGATION (INVESTIGATION CASES ONLY)
_ CASE OPEN AND ACTIVE INVESTIGATION CONTINUING

INCIDENT NO. 010208077 ●CURRENT INFORMATION REPORT●               PAGE 2.013

SUPPLEMENT(S)

No-0001

Offense- POSS MARIJUANA (FEL)/MARIJU,MISH
                    Street Location Information
Number-    1400 Name-FRANKLIN              Type-          Suffix-
Apt No-          Name-AUSTIN               Type-          Suffix-
Date of Offense-02/04/77                   Date of Supplement-02/13/77
Compl(s) Last-STATE OF TEXAS  First-          Middle-
            Last-
                    Recovered Stolen Vehicles Information
 Stored-                        By-                      FAX- (000) 000-0000
 Officer1-SNOWMAN             Emp#-102193 Shift-  Div/Station-CRIME LAB

                    SUPPLEMENT NARRATIVE

SUSPECT(S): TIMOTHY K. ROBERTSON                  REF:L77-1488
                                            CRIMINALIST:SNOWMAN

                    EVIDENCE SUBMITTED
____CONTAINER(S) CHUNK SUBSTANCE     ____CIGARETTE(S)          ____TABLET(S)
____CONTAINER(S) POWDER              ____CIGARETTE STUB(S)     ____CAPSULE(S)
_1__CONTAINER(S) PLANT SUBSTANCE     ____CIGAR(S)              ____PIPE(S)
____CONTAINER(S) LIQUID              ____CIGAR STUB(S)         ____SYRINGE(S)
____OTHER:

                    RESULTS OF ANALYSIS

MARIJUANA - APPROXIMATELY 2.7 OUNCES


Supplement entered by - 102193
Report reviewed by-GF
Date Cleared- 02/04/77              Employee Number-103730

                    END OF PAGE TWO



```
***************************************************************************
      ABOVE REDACTION WAS THE END OF THE T.C.I.C./N.C.I.C PRINTOUT
=N  00406242                                    **NQY3(LNQY)** PG 1
LINE             NAME          PTY RAC SEX DOB   JAIL W/W CIN   SPN & CLS
     BALDERAS, DAVID RENE       D   W   M 070464  H    H        00406242994
     BALDERAS, DAVID RENE       D   W   M 070464  H    H        00406242995
     BALDERAS, DAVID RENE       D   W   M 070464  H    H        00406242996
     BALDERAS, DAVID RENE       D   W   M 070464  H    H        00406242997
     BALDERAS, DAVID RENE       D   M   M 070464  H    H        00406242998
TO SEE MORE ALIAS NAMES USE THE ALIAS NAME INQUIRY
LAST ADDRESS: 6003    ANGEL FALLS    HOUSTON    TX77041   PHONE: 713-937-7088
HGT: 505 WGT: 180 EYES: BRO HAIR: BLK SKIN: LBR BLD: MED SMT:

*****                      CASE INFORMATION                     *****
LN  CDI  CASE NUMBER  CRT CON FIL-DT OFFENSE    NXT-ST S CST  INS DISPOSITION
01  002  963278201010 011 DEF 072896 ASSAULT    082396 D  D   MIN DISM-082396
02  002  963278101010 011 DEF 072896 ASSAULT    082396 D  D   MIN DISM-082396
03  001  JC5100302672 J51 DEF 071995 TRAFFIC           N  A   WAR
04  001  JC1100622181 011 DEF 062089 TRAFFIC           M  I   WAR
05  003  054158001010 184 DEF 091289 THEFT      020190 D  C   FID DISP-020190
06  002  892880101010 002 DEF 080989 OTHER MISD 101889 D  C   MIN DISP-101889
07  002  883192401010 007 DEF 090888 OTHER MISD 112288 D  C   MIN DISP-112288
08  003  051021801010 228 DEF 090888 OTHER DRUG 102488 D  D   FID DISM-102488
TO SEE NEXT PAGE PRESS ENTER. CLEAR TO TERMINATE.
PF6=LBKI PF9=LPER PF11=LAPI ** LINE NO =) ENTER=LQY6 PF1=LBFD PF2=APO1 PF4=LDIS
PF5=LCDP PF7=LQY8 PF8=LQY9 PF10=LATT PF5-99=PTSM (LN + X PF5=CSR30 OR PF8=LDSP)
=N  00406242                                    **NQY3(LNQY)** PG 2
```

```
     BALDERAS, DAVID RENE                  B   W   M 070484  M   M       00406242994
*****                              CASE INFORMATION                          *****
LN  CDI  CASE NUMBER  CRT CON FIL-DT OFFENSE    NXT-ST S CST   INS DISPOSITION
01  002 062893501010  006 DEF 091981 DRUG OFF    102681 D  C   MIN DISP-102681
```

```
-END OF DISPLAY-  HIT CLEAR TO TERMINATE.
PF6=LBKI PF9=LPER PF11=LAPI ** LINE NO =) ENTER=LQY6 PF1=LBFD PF2=APO1 PF4=LDIS
PF5=LCDP PF7=LQY8 PF8=LQY9 PF10=LATT .PF5-99=PTSM (LN + X PF5=CSR30 OR PF8=LDSP)
```

```
 RUN DATE - 02/05/97      JUSTICE INFORMATION MANAGEMENT SYSTEM        001
 TIME - 12.46.19              HARRIS COUNTY CRIMINAL RECORD            PTSP

SPN: 00406242

 FILING DATE:072896     DEFENDANT NAME:BALDERAS, DAVID RENE
 OFFENSE:ASSAULT-BODILY INJURY          CRT/CASE: 011/963278201010

              DISPOSITION               DAYS MONS YRS   IND   FINE    DISP DATE

 DISMISSED                                                             082396
 DISMISSED                                                             082396




 FILING DATE:072896     DEFENDANT NAME:BALDERAS, DAVID RENE
 OFFENSE:ASSAULT-BODILY INJURY          CRT/CASE: 011/963278101010

              DISPOSITION               DAYS MONS YRS   IND   FINE    DISP DATE

 DISMISSED                                                             082396
 DISMISSED                                                             082396




 FILING DATE:091289     DEFENDANT NAME:BALDERAS, DAVID RENE
 OFFENSE:THEFT $200-$750                CRT/CASE: 184/054158001010
 HOW PLED: LESSER OFF. GUILTY PLEA - NO JURY
              DISPOSITION               DAYS MONS YRS   IND   FINE    DISP DATE

 COMMITTED TO LOCAL JAIL                 0003           HCJ 0000500    020190




 FILING DATE:080989     DEFENDANT NAME:BALDERAS, DAVID RENE
 OFFENSE:DRIVING WHILE LICENSE SUSP.    CRT/CASE: 002/892880101010

              DISPOSITION               DAYS MONS YRS   IND   FINE    DISP DATE

 CONVICTION-PLEA OF GUILTY               0003           HCJ 0000200    101889




 FILING DATE:090888     DEFENDANT NAME:BALDERAS, DAVID RENE
 OFFENSE:UNLAW CARRY WPN                 CRT/CASE: 007/883192401010

              DISPOSITION               DAYS MONS YRS   IND   FINE    DISP DATE

 CONVICTION-PLEA OF GUILTY               0004           HCJ 0000100    112288




 FILING DATE:090888     DEFENDANT NAME:BALDERAS, DAVID RENE
 OFFENSE:POSS COC 28-LT200G-NON-CRACK   CRT/CASE: 228/051021801010
```

| DISPOSITION | DAYS MONS YRS | IND | FINE | DISP DATE |
|---|---|---|---|---|
| DISMISSED | | | | 102488 |

```
 RUN DATE - 02/05/97     JUSTICE INFORMATION MANAGEMENT SYSTEM        002
 TIME - 12:43.19              HARRIS COUNTY CRIMINAL RECORD           PTSP

SPN: 00406242                                          .      .

FILING DATE:091981     DEFENDANT NAME:BALDERAS, DAVID RENE
OFFENSE:POSS MARIJ 0-2 OZ             CRT/CASE: 006/062893501010

            DISPOSITION              DAYS MONS YRS   IND    FINE    DISP DATE

CONVICTION-PLEA GUIL/NOLO CONT          0003          HCJ 0000150     102681



* * * * * * * * * * * * * END OF DISPLAY * * * * * *  * * * * * * * *
```

**Exhibit B**

Letter from HPD Sgts. Todd Miller and Jim Ladd to Chuck Rosenthal, District
Attorney's Office (dated July 9, 1996)

# FAX TRANSMISSION SHEET

### HOUSTON POLICE DEPARTMENT
### HOMICIDE DIVISION
**FAX NUMBER:713-731-5856**
8300 MYKAWA
HOUSTON, TEXAS 77048
PHONE:713-731-5844

DATE:        July 9, 1996

FROM:        TODD W. MILLER, DETECTIVE POLICE OFFICER

TO:          Chuck Rosenthal, Felony Division B, 5th floor

COMPANY:  District Attorney's Office

SUBJECT:   Reinaldo, and Albert Dennes

YOU SHOULD RECEIVE  3   PAGE(S) **INCLUDING THIS COVER SHEET.**  IF YOU
DO NOT RECEIVE ALL PAGES, PLEASE CALL OFFICER MILLER AT 713-731-5844.


**COMMENTS:**

# CITY OF HOUSTON
### INTER OFFICE CORRESPONDENCE

TO: Chuck Rosenthal
District Attorney's Office

FROM: Todd Miller
Jim Ladd

DATE: July 9, 1996

SUBJECT: **The Diamond Caper**

Chuck,

We interviewed Luis Hector Fugon, and Francisco Elvira, the two crooks hired by Ray and Albert to rob the jeweler at his home. Fugon and Elvira both denied everything, especially regarding Ray and Albert. Fugon, however, said in his written confession that he met with the Cubans" two times and admitted the whole deal was set up by "The Cubans" (Ray and Albert). Fugon also admits knowing David Balderas, and talks about his part in the whole deal. I am sending a copy of Fugon's statement along for you to look over. I didn't have Fugon's statement when I interviewed him, therefore unaware of his admissions concerning Ray and Albert. Fugon's current denial concerning Ray and Albert leads me to believe that he is holding out because he is afraid of them. After talking things over, we feel that if we can meet with Fugon, his attorney, and you, Fugon will be cooperative, (Similar to meeting we all had with Estrella). Fugon has been offered 50 years aggravated out of the 232nd D.C., and is not very thrilled with the offer. Fugon's attorney is Robert Alexander. Think about this and let me know whether you feel this is a viable option.

I have also been in touch with David Balderas and he is still cooperative. Balderas' story differs from Fugon's slightly, but can be worked out I'm sure. Balderas was also able to tell us that he had personal knowledge of the shooting Albert was in at his jewelry store several years ago. Albert told Balderas that he, Albert, had been buying stolen Rolex watches from the guy for several months and knew him well. On the day of the shooting, Albert had just but some stolen merchandise from the suspect. Albert said the suspect then wanted more money and Albert said the guy tried to rip him off. Albert and his wife at the time, Juanita, ended up shooting the suspect, killing him. Albert and Juanita described the shooting at the time as a random robbery gone bad and claimed they did not know the suspect. Mike Landry in Major Offenders also has an informant which corroborates Balderas' version of events. We are planning to confront Albert's ex-wife, Juanita, with this new information and attempt to get some semblance of the truth from her.

Balderas also told us he knows some people that deal in semi-precious stones, and run an automobile body shop, (some combination). Anyway, Francisco also knows these people and did some prior business with them, always semi-precious stuff. Two or three days before we arrested Francisco, he was trying to sell a large amount of loose diamonds to these people, who thought it was rather suspicious since Francisco had never had that much stuff before. We are planning to interview the people at the body shop. This is probably how Francisco was able to bond out of jail so quick.

The burglary, with several million dollars worth of middle eastern and African art stolen, is positively locked down on Ray and Albert. The elderly complainants are respectable and willing to testify against Ray. They remember Ray coming over to their house for dinner

**Page 2**
**Chuck Rosenthal**

several times, and questioning the security measures, as well as examining all the art. The couple even mentioned a comment Ray made to the husband after the burglary had taken place, "I'll bet whoever stole all of your stuff was so worked up, he went home and fucked the shit out of his wife". The couple positively identified the artifacts recovered from Ray's safe as items stolen from their house during the burglary.

If we can get something worked out with Fugon concerning the home invasion, or just go with Balderas' statement, and taking into account the Burglary, and the shooting Albert lied about, maybe we can get "death" on Ray and or Albert. Let me know what you think, especially regarding a meeting with Fugon, and his attorney.

*Todd*

Todd Miller

**Exhibit C**

<u>United States v. David Balderas</u> Sentencing Hearing, Cause No. 7:98-CR-00154-2,
United States District Court for the Southern District of Texas, Brownsville Division
(July 29, 1999)

1                    IN THE UNITED STATES DISTRICT COURT

2                  FOR THE SOUTHERN DISTRICT OF TEXAS

3                           MCALLEN DIVISION

4    UNITED STATES OF AMERICA        §       CASE NO. 7:98-CR-00154-2
                                     §       MCALLEN, TEXAS
5    VERSUS                          §       THURSDAY,
                                     §       JULY 29, 1999
6    DAVID RENE BALDERAS             §       11:08 A.M. TO 11:29 A.M.

7
                                SENTENCING
8                               (AMENDED)

9                BEFORE THE HONORABLE RICARDO HINOJOSA
                     UNITED STATES DISTRICT JUDGE
10


11
          APPEARANCES:                      SEE NEXT PAGE
12        COURT RECORDER:                    ANTONIO TIJERINA
          USPO:                              VELMA BARERRA
13


14
          THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE
15        UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS
          AUTHORIZED BY COURT ORDER.  UNAUTHORIZED REPRODUCTION
16        WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE
          COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE.
17        General Order 94-15, United States Court, Southern
          District of Texas.
18


19


20                   TRANSCRIPTION SERVICE BY:

21            JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                    935 ELDRIDGE ROAD, #144
22                   SUGAR LAND, TEXAS 77478
              Tel: 281-277-5325 / Fax: 281-277-0946
23               www.judicialtranscribers.com

24
          Proceedings recorded by electronic sound recording;
25            transcript produced by transcription service.

2

1                          <u>APPEARANCES</u>:

2

3   FOR THE PLAINTIFF:              LUIS MARTINEZ, ESQ.
                                    AUSA
4                                   1701 W. BUS. HWY 83, STE. 600
                                    MCALLEN, TX  78501
5

6
    FOR THE DEFENDANT:             JONATHAN MUNIER, ESQ.
7                                  3700 N. MAIN
                                   HOUSTON, TX  77009
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          HOUSTON, TEXAS; THURSDAY, JULY 29, 1999; 11:08 A.M.

2          THE COURT:  Next is Criminal Number M-98-154-02,

3     United States of America versus David Rene Balderas.

4          MR. MARTINEZ:  United States is present and ready,

5     Your Honor.

6          MR. MUNIER:  Jonathan Munier for the Defendant.

7     Mr. Balderas is present also, Judge.

8          THE COURT:  Mr. Balderas, have you had an

9     opportunity to review the Presentence Investigation Report

10    that was prepared in your case, sir?

11         DEFENDANT BALDERAS:  Yes, sir.

12         THE COURT:  Have you discussed it with your

13    attorney, sir?

14         DEFENDANT BALDERAS:  Yes, sir.

15         THE COURT:  Is there anything that you want to

16    tell the Court about this Report or anything else before I

17    make a decision as to what kind of sentence to impose in

18    your case?

19         DEFENDANT BALDERAS:  No, sir.

20         THE COURT:  There is nothing you want to say here

21    this afternoon -- this morning?

22         DEFENDANT BALDERAS:  Well --

23         THE COURT:  It doesn't have to be about the

24    Report, just anything that you think I should know here

25    before I make a decision.

4

1          MR. MUNIER:  Well, the case is -- the question is

2  -- the question sounds as if it is in the Report and I have

3  some objections to the Report that I wish to address with

4  the Court.

5          THE COURT:  I will get to you.

6          MR. MUNIER:  Okay.

7          THE COURT:  But I'm asking him.  It doesn't have

8  to be about the Report, just anything that you think I

9  should know here before I make a decision in your case.  Is

10  there anything that you want to say here?

11          DEFENDANT BALDERAS:  Nothing I'm going to say is

12  probably going to make -- because of what I've done, you

13  know?  I'm not going to sit here and tell you that -- you

14  know, why I did it, or you know, I feel bad about it.  You

15  know, I mean, I know it was wrong.  I know what I did was

16  wrong, what I've been doing was wrong.

17          Yeah, but there's nothing I can sit here and tell

18  the Court or yourself so to make me any different than what

19  I've been hearing today about.

20          THE COURT:  That would make it any different than

21  what?

22          DEFENDANT BALDERAS:  That what I've been hearing

23  today about, you know, drugs and society and everything.

24          THE COURT:  Okay.  And you heard it all?

25          DEFENDANT BALDERAS:  Yes, sir.

5

1               THE COURT:  I don't have to repeat it?

2               DEFENDANT BALDERAS:  No, sir, but I understand.

3               THE COURT:  Okay.  Is there anything -- you live

4    in Houston?

5               DEFENDANT BALDERAS:  Yes, sir.

6               THE COURT:  Is there anything else that you want

7    to say here?

8               DEFENDANT BALDERAS:  No, sir.

9               THE COURT:  Sir, you've obviously reviewed this

10   Report with him, Mr. Munier?

11              MR. MUNIER:  Yes, I have, Judge.

12              THE COURT:  Is there anything you'd like to say on

13   his behalf and which, if any, objections do you need a

14   ruling from the Court on here?

15              MR. MUNIER:  Judge, I've made an objection

16   specifically to the finding of the weapons in reference to

17   this particular Defendant and I think they're specific.  And

18   I wrote an objection we had prepared.  I submitted it to the

19   Court an objection that's written and although it's kind of

20   tongue-in-cheek, I think I've used some words that I

21   probably would regret after I read it four or five months

22   later in terms of being a minion and a snitch or something

23   like that, which I'll be glad to explain.

24              But the simple fact of the matter is my fellow,

25   who has been a cooperating informant for years with the

1  Houston Police Department -- as a matter of fact, ten days

2  after I left the DA's Office in Houston in 1989, I was

3  called by a couple of narcotics officers that I've known for

4  years and asked me to shepherd him through the system when

5  his problems came up because basically he had been

6  cooperating with him on a long-term basis.

7          And this particular circumstance, he was set up by

8  a Federal DEA informant, who was told to come down here and

9  meet with these other two fellows and he did exactly what he

10 was told and then he was arrested.

11         He was kind of halfway between his Houston

12 handlers and these fellows down here.  And of course, he was

13 just far enough off -- "off the reservation," as they would

14 say, that we ended up -- after my analysis of the situation

15 where we entered our guilty plea and we've come before the

16 Court.

17         And when you look at his criminal record, a lot of

18 those things, I'm sure, are before you.  Now obviously

19 there's stuff like the DWLS and stuff like that are not a

20 major deal, but his other transactions, you can -- if you

21 read between the lines, you can kind of see where they're

22 coming from.

23         Basically he has cooperated on a long-term basis

24 on many investigations.  He's testified for the State in

25 capital murders.  I have not put these in the form of a

1   written motion, but now I know I could do it under seal and

2   I'm not giving this information directly to the PSI Officers

3   because basically I didn't want him to go before the case

4   and I really wanted to tell the Court first where I am in

5   reference to this particular Defendant and what he has

6   actually done.

7          But in reference to my specific objections, the

8   weapons I do not believe were appropriate.  He flew down

9   here within an hour of the arrest.

10          THE COURT:  A man with his experience certainly it

11   would have been reasonably foreseeable to him that they are

12   weapons involving a drug transaction.  He's had a carrying a

13   weapon conviction here --

14          MR. MUNIER:  Oh, I'm not --

15          THE COURT:  -- it certainly was reasonably

16   foreseeable to him and if that's the objection, the Court's

17   going to overrule it.

18          MR. MUNIER:  All right.

19          THE COURT:  What else?

20          MR. MUNIER:  Also, Judge, I think I asked for a

21   role reduction in terms of his particular status in this

22   particular transaction.

23          THE COURT:  Okay.  I have reviewed that objection

24   and I've reviewed this Presentence Investigation Report and

25   the facts here, and the Court is going to overrule that

1  objection.  I don't find him a minor or minimal participant

2  here.

3          MR. MUNIER:  All right.  Well, Judge, then

4  basically what we're left with is a discussion of the

5  Government has filed a 5K motion in reference to this

6  particular Defendant and because of the cooperation that

7  still is taking place in Houston, I kind of wanted to tell

8  the Court some of the stuff that's taken place in reference

9  to a particular Defendant, that do not appear in the Report

10  that I have just -- I have personally participated in with

11  him along the years and to let the Court know of that kind

12  of cooperation.

13          This is his first major --

14          THE COURT:  And I have to be real honest with you.

15  I don't have much sympathy for people that are providing

16  cooperation and assistance at the same time that they're

17  violating the law.  And you don't appear here regularly, but

18  I don't --

19          MR. MUNIER:  Well, I don't --

20          THE COURT:  -- I mean, I don't think that that

21  benefits anybody.

22          MR. MUNIER:  Well, --

23          THE COURT:  The people that are out testifying

24  against them, how can we trust them?  I mean, how can the

25  system really reward somebody without testifying against

9

1  somebody for violating the law?  If you're the fact-finder,

2  you'll -- how can I believe this guy?

3          MR. MUNIER:  Well, I -- well, there's --

4          THE COURT:  And really, I mean, it --

5          MR. MUNIER:  Well --

6          THE COURT:  And I know the Government uses people

7  like that and you know, pays them good money.  They don't

8  pay the taxes on it.  Sometimes they get property, but

9  they're out violating the law while at the same time

10 testifying and taking money from the Government.  As a

11 Judge, you can't be very sympathetic.  Juries definitely are

12 not.

13         MR. MUNIER:  Well I'm not saying that -- Judge, I

14 understand fully the philosophical quagmire of it all.

15         THE COURT:  And then it's -- to give him credit

16 for something that they've done when they're out taking all

17 this money from the Government to testify against somebody

18 and make a case on somebody, but they're out doing the same

19 thing, well --

20         MR. MUNIER:  Well, I --

21         THE COURT:  -- it's like with kids at home, I

22 mean.  I don't think parents reward that situation very

23 much.

24         MR. MUNIER:  Well, I don't -- you know, I will not

25 disagree with you philosophically whatsoever.  It is an

1   insidious vicious circle.

2           THE COURT:  Well, it's not philosophical.  It's

3   fairness, I mean.

4           MR. MUNIER:  Well, no, I agree.  I don't

5   necessarily disagree.  I hated it when I was a prosecutor.

6   I've always hated it to the Fifth Circuit.  The simple fact

7   of the matter has taken place.

8           THE COURT:  I don't have a problem -- I don't have

9   a problem with using informants.  I don't have a problem

10  with paying the informants.  I do have a problem with people

11  with who are taking this consideration and violating the law

12  at the same time.  That is really -- that -- that is wrong.

13          MR. MUNIER:  I understand.  I fully understand,

14  Judge.  I understand -- I mean, well what I want to inform

15  the Court is, he has been called upon many times when

16  there's been no consideration to testify about various

17  things, including capital murder trials where he had no

18  involvement, other than knowing what the --

19          THE COURT:  What did he testify at the capital

20  murder trial?

21          MR. MUNIER:  He testified at a capital murder

22  trial to basically a killing the witness scheme that the

23  Defendant had perpetrated in the 263rd.  After the Court --

24          THE COURT:  That he had witnessed or what?

25          MR. MUNIER:  No.  Well, he had heard the guy

1    talking about it and informed the authorities right away.

2              THE COURT:  While he was in custody?

3              MR. MUNIER:  No, no, no, no, no.  When the

4    Co-Defendant basically works with the Defendant, a guy named

5    Dennes (phonetic) -- or D-E-N-N-E-S, had murdered a jeweler

6    in Houston and him and his brother had stolen the jeweler's

7    property.  The family came to David or made it known to

8    David Balderas that they wanted to have some of these

9    witnesses that they botched and left alive killed, and he

10   informed the authorities right away, without any

11   consideration or anything and immediately testified.

12             THE COURT:  Well he's had -- he's had two cases

13   dismissed that -- those must have been consideration for

14   something?

15             MR. MUNIER:  Well, yes, sir, they were

16   consideration for something.

17             THE COURT:  Right.  And probably for testifying in

18   the capital murder case.

19             MR. MUNIER:  No, no, no, no, no.  No, no, no, no.

20             THE COURT:  It's something else?

21             MR. MUNIER:  Oh, it's something else, Judge, yes,

22   something else.

23             THE COURT:  He just had 217-pound marijuana case

24   where they seized $100,000 and a small quantity of cocaine

25   dismissed.  There's no explanation as to why that was done.

1    He's had a 4-kilogram cocaine case dismissed with no

2    explanation as to what that was about.

3            So he's gotten some good consideration here.

4            MR. MUNIER:  Well, I'm not saying that he hasn't.

5    I'm just saying that it goes beyond the scope of what's in

6    the PSR Report and I want to make you aware of it.

7            THE COURT:  Right, and it's not here and if

8    there's even more, I mean, that's even more eye-opening.

9            Okay.  Is there something else?

10           MR. MUNIER:  Oh, no, no, Judge.  I'm really

11   responding to the Court's questions.

12           THE COURT:  Well, I thought you were responding to

13   yourself.

14           MR. MUNIER:  No.  No, I understand, Judge, but

15   frankly, Judge, he basically still maintains the posture of

16   cooperation with the law enforcement.  Whether he's paid or

17   not, that's not the issue.  He's been passing on information

18   for years and to his own detriment.  He's actually had a

19   family member murdered early in the game, which I didn't

20   also produce, but I didn't really want to do that, so.

21           THE COURT:  Well, the wife --

22           MR. MUNIER:  Yeah.

23           THE COURT:  But there's no indication here that

24   this was in relationship to his cooperation and assistance.

25           MR. MUNIER:  Well, it was never quite proved, but

1  no other reason for his wife being murdered.  You know, I

2  mean -- all I'm saying is this fellow is a creature of the

3  system.

4           THE COURT:  This is way back in 1988.

5           MR. MUNIER:  That's true, Judge.  That's what I'm

6  -- I came across him in 1989 when I left the DA's Office and

7  he even cooperated before I left the DA's Office in Harris

8  County.

9           THE COURT:  Okay.  Well, he's been cooperating

10  during all this period of time, but then there's been a

11  continuation of arrests and dismissals on him, I guess.

12           MR. MUNIER:  Well sometimes he's actually arrested

13  as part of the operation, Judge.

14           THE COURT:  It doesn't say that.

15           MR. MUNIER:  I know it doesn't say that, and I

16  doubt -- you know, this is a dirty, insidious game and

17  that's what the problem is in some respects.  You're right.

18  You know, your inherent distrust of it is to no avail.

19           THE COURT:  There's no inherent distrust of this.

20  What the inherent distrust is if somebody acting like

21  they're cooperating and providing assistance and being an

22  informant when they're out violating the law.  There's --

23  that makes a very serious distrust of that type of behavior

24  and that's what we have here.

25           MR. MUNIER:  Well you know, and it's the reason --

14

1          THE COURT:  And believe me, he becomes worthless

2   to the Government because you put this man on the stand the

3   next time he testifies, what do you think the jury is going

4   to think about this?

5          MR. MUNIER:  Well usually the argument of the

6   Prosecutor is well, you can't -- you know, fleas, as long --

7   fleas on the dog.  That's usually what the argument is.

8          THE COURT:  No, but in this case --

9          MR. MUNIER:  They always adopt him somehow and get

10  their convictions.

11         THE COURT:  -- but in this case we have the added

12  problem that while he's been adopted, he's running amok

13  here.

14         MR. MUNIER:  Well --

15         THE COURT:  A lot of times it's stuff that's in

16  the past and they're testifying about stuff they had done in

17  the past, but they're no longer doing that.  They're just

18  being paid now and they're providing information and have

19  rehabilitated themselves to some extent in some situations,

20  they've actually rehabilitated themselves.

21         But in his case, while he's being paid and

22  providing the information, he's also violating the law.

23  That's not the usual situation we get as witnesses from

24  these people.

25         MR. MUNIER:  Well Judge, as I was trying to

1 explain, in this particular situation we had no clear orders

2 on him and we left the reservation and that's why I pled --

3 that's why we pled guilty.

4           THE COURT:  There were no orders.  You didn't

5 leave the reservation.  That was his reservation.  That's

6 what he was involved in.

7           MR. MUNIER:  Well, I --

8           THE COURT:  I mean, he was involved in drug

9 transactions.  He wasn't doing his -- maybe I missed

10 something, but is the claim here that he was doing

11 undercover work or informant work here?

12           MR. MUNIER:  They were -- they did not have clear

13 signals with the HPD narcotics police officer that's been

14 handling Mr. Bradley.  And I've discussed that with

15 Mr. Bradley, as well as Mr. Martinez.

16           THE COURT:  Mr. Balderas, you mean?

17           MR. MUNIER:  Yes, yes.

18           MR. MARTINEZ:  Your Honor, I --

19           THE COURT:  Is there a Mr. Bradley someplace?

20           MR. MUNIER:  Well that's the HPD officer that's

21 been handling him.

22           MR. MARTINEZ:  HPD Detective Bradley, I spoke to

23 him.  He said absolutely in no way did this Defendant have

24 permission to come down here to do a drug deal -- to get

25 involved in a drug deal.  He wasn't working for HPD.  And

16

1  then Officer Bradley said he would come down and testify to

2  that effect.  However, Officer Bradley did tell me that

3  Mr. Balderas in the past had been a very reliable informant

4  and that subsequent to his arrest that he had assisted the

5  HPD in seizure of at least 2 kilos of cocaine, three to four

6  individuals and over $15,000 in cash and that's the basis

7  for the Government's 42-month recommendation on a 5K1, Your

8  Honor.

9          But absolutely in this case, Officer Bradley told

10  me there was -- there's no way this man could have thought

11  that he was going to be working as an undercover and that's

12  why he pled guilty, I believe.

13          THE COURT:  Well let me make some findings.

14          MR. MARTINEZ:  Yes, Your Honor.

15          THE COURT:  And then I'll come back to you-all.

16          The Base Offense level, based on what the

17  Defendant had pled guilty to here is 26.  Pursuant to

18  Guideline Section 2D1.1(b)(1), the Court is going to find

19  that there were weapons used in -- possessed in relationship

20  to this drug trafficking crime that was reasonably

21  foreseeable to this Defendant.  So there would be a plus-2

22  here.

23          He has an adjusted Offense Level of 28.  There

24  will be a minus 3 for acceptance of responsibility.  His

25  total Offense Level is 25.  His Criminal History Category is

1  2.  The Court will adopt paragraphs 18 through 37 of this

2  Presentence Investigation Report.  His guideline range,

3  therefore, becomes 63 to 78 months.

4          There is a Motion to Depart here.  Do you want to

5  address yourself to this?

6          MR. MARTINEZ:  Your Honor, the Motion to Depart

7  for Mr. Balderas is based solely on two seizures, as I

8  understand it from Officer Bradley.

9          THE COURT:  Can you explain to me when these

10  seizures occurred?

11          MR. MARTINEZ:  Your Honor, the exact dates, I'm

12  not sure.  I know that they were after his arrest and after

13  he was out on bond.  They were two separate kilos of

14  cocaine, if I'm not mistaken, and there was also some money

15  seized, 15,830-some-odd-dollars.  Two individuals were

16  arrested in the first seizure and one individual in the

17  second seizure.

18          THE COURT:  And this is just information that

19  happened to come to him -- or how did that happen?

20          MR. MARTINEZ:  Your Honor, I fully doubt it was --

21  I'm actually not exactly clear.  I know that's just from

22  Officer Bradley telling me that.

23          MR. MUNIER:  He received a call.

24          MR. MARTINEZ:  Yes, Your Honor.

25          MR. MUNIER:  He introduced the undercovers and

1  they set up the delivery that came on wheels basically.

2        THE COURT:  Somebody just called him out of the

3  clear blue?

4        MR. MUNIER:  Judge, he's been doing this for a

5  long time.

6        THE COURT:  Right.  Okay.  Anything else?  And

7  your recommendation was?

8        MR. MARTINEZ:  42 months, Your Honor.

9        THE COURT:  How did you reach the recommendation

10 of 42 months?

11        MR. MARTINEZ:  Well that's -- I felt that that

12 would be fair since he's the one that was holding out for

13 trial and he's the one that --

14        MR. MUNIER:  Whoa, that I don't --

15        MR. MARTINEZ:  I was under the assumption that we

16 were going to have to try him and that's how, you know, --

17        THE COURT:  If you mean compared to Mr. Hernandez,

18 Mr. Hernandez has no prior record.

19        MR. MARTINEZ:  Right.

20        THE COURT:  Except one reckless driving charge and

21 he was acquitted by the jury and I mean, so he has no prior

22 record.

23        MR. MARTINEZ:  I thought 42 months was --

24        MR. MUNIER:  Correct.

25        THE COURT:  He hasn't been serving as an informant

1  while violating the law here.

2          MR. MARTINEZ:  And that's what I was going to

3  point out to the Court.  I felt that it was pretty onerous

4  that he's been an informant, then he comes and commences a

5  drug deal and when he's left here, we give him a chance that

6  the Court and the police officers gave him a chance to try

7  to knock down that sentence to 42 months and he's got, you

8  know, a long-standing record.  I'm not sure this was the

9  first time he's ever flip-flopped like this, work both ends

10 of the street, so to speak.

11         MR. MUNIER:  I know that.

12         MR. MARTINEZ:  So that was why we're -- that was

13 why our Agent --

14         THE COURT:  Who are you talking to?

15         MR. MUNIER:  I was talking to him.  He said that's

16 not what I was doing.  And I told him, I know that, I know

17 that.

18         THE COURT:  What were you doing?

19         DEFENDANT BALDERAS:  Well I was coming down here

20 to try to do this little business and get up there into

21 Houston.

22         MR. MUNIER:  If he gets up to Houston, he makes

23 the money.  Down here there's nothing for him.  If he gets

24 the transaction to go to Houston --

25         THE COURT:  Well that's not what he pled to.

1          MR. MUNIER:  Well, it still doesn't excuse the

2     conduct, Judge, under the standard of law.  I mean, that's

3     the problem.  I mean, we're caught between -- we're caught

4     between two Indian Chiefs.

5          THE COURT:  Those being who?

6          MR. MUNIER:  The authorities down here and the

7     authorities up there.  The authorities up there are --

8          THE COURT:  The authorities up there, I mean, what

9     they're told with regards to information -- and I am sure

10    that that's his arrangement with the Houston Police

11    Department.  You don't go do this on your own without

12    telling us exactly what you're doing.

13          So this to say that I was on my way and I had to

14    get this to Houston, it's not true because in order to have

15    gotten any credit for it, he needs to have -- he needed to

16    have visited with him from the very start about this whole

17    transaction.

18          So you're a former DA, I've been judge for

19    16 years.

20          MR. MUNIER:  Sure.

21          THE COURT:  We've got the Prosecutor here and

22    we've got a well-known informant here who's been in the

23    business for a while here, so he knows that he needed to

24    have told him from the very start, not that he comes down

25    here and says, "Let me get this stuff up there and once I'm

1   in the Houston Police Department jurisdiction, I'll call

2   them up and say, 'Hey, guys.'"

3           MR. MUNIER:  Except, Judge, when we came down

4   here, we didn't even know the dope was in the house or where

5   it was.  We got off the plane, came to this house and the

6   transaction started within 30 minutes.  That's the point --

7   that's the whole point.  And this is like --

8           THE COURT:  Well you weren't down here.

9           MR. MUNIER: Oh, no, absolutely not.  I don't mean

10  "we" in the collective sense, absolutely not.

11          MR. MARTINEZ:  Your Honor, just for the Record,

12  undercover Padilla has told me that this man was giving him

13  directions of where the dope was going to go to, so I think

14  he knew a little bit more than 30 minutes in advance.

15          THE COURT:  Okay.  And your recommendation is

16  still 42 months?

17          MR. MARTINEZ:  42, yes, Your Honor.

18          THE COURT:  Explain to me again why you would be

19  that kind here?

20          MR. MARTINEZ:  I would be that kind, Your Honor,

21  because he assisted the officer who I spoke to in the

22  seizure of 2 kilos --

23          THE COURT:  Right.  After he's been caught here.

24          MR. MARTINEZ:  Yes, Your Honor.

25          THE COURT:  He's decided -- I'm going to see who

1   else I -- how do you trust that information?

2           MR. MARTINEZ:  Your Honor, it's been a long --

3   this case has been -- it's an old case, but I remember

4   speaking to the officer and he clearly said that he got the

5   call and it was set up.  It was legitimate and these people

6   were, indeed, involved in cocaine transactions and that it

7   was -- and I said, how good was it?  He was straight up.  He

8   didn't entice anybody.  He didn't -- these people were long-

9   known cocaine dealers.

10          THE COURT:  Okay.  Anything else, Mr. Munier?

11          MR. MUNIER:  No, Judge.

12          THE COURT:  Mr. Balderas, anything else?

13          DEFENDANT BALDERAS:  No, sir.

14          THE COURT:  Okay.  The Court is ready to proceed.

15  The Court is going to go ahead and sentence him to the

16  custody of the Bureau of Prisons for 52 months.  I'm going

17  to grant the Motion to Depart to the extent that I've stated

18  here.

19          There will be a four-year supervised-release term

20  in this case to commence upon release from confinement under

21  the conditions which have been adopted as standard in the

22  Southern District of Texas to include all statutory

23  requirements.  It's a three-year supervised-release term.

24          There will be a $100 special assessment against

25  him as required by law.  The Court will not impose a fine

1  nor the cost of incarceration or supervision on him in that

2  the Court would find that he would be financially unable if

3  the Court were to give him installments to make those

4  payments.  And it would be a hardship on this Defendant.

5         The reasons that I have chosen this sentence,

6  which is not within the Guidelines, is strictly at the

7  Government's request with regards to some consideration for

8  some case that may have been worked on by this Defendant

9  after he was arrested.  The Court feels that it has been

10 more than generous with regards to any consideration here,

11 based on his prior record here and his involvement in this

12 particular offense.

13        And sir, I want you to understand that if you

14 would like to appeal this sentence, you have within ten days

15 from the entry of Judgment in this case within which to do

16 that, sir.  And the way that you do that, sir, is by filing

17 a written Notice of Appeal with the Clerk of the Court

18 within that time period.  If you're unable to afford the

19 cost of an appeal within that time period, you will also

20 have to file a Motion to Proceed *In Forma Pauperis* within

21 which you indicate to the Court that you're unable to afford

22 the cost of an appeal.

23        If you-all don't have anything else, you-all can

24 be excused.  Thank you very much.

25        MR. MARTINEZ:  Judge, we move dismissal of the

1   remaining counts as to this Defendant.

2          THE COURT:  That's granted.

3          MR. MUNIER:  I would request a voluntary

4   surrender, Judge.  He's still cooperating -- not cooperating

5   in the sense of making any kinds of transactions, but they

6   are still doing some intelligence.

7          THE COURT:  Mr. Martinez?

8          MR. MARTINEZ:  Your Honor, I will go ahead and

9   change to ask the Court to let him remain out on bond.  I

10  know it's -- it's two months, but they --

11         THE COURT:  Is he helping somebody?  How can he be

12  helping?

13         MR. MUNIER:  Just, just --

14         THE COURT:  How can you use this man as a witness?

15         MR. MARTINEZ:  He's not going to be a witness,

16  Your Honor, but there was an undercover and I spoke to

17  Lieutenant Bradley or Detective Bradley about that.  I said

18  you can't use him.  He's burned.  He said, yeah, we have

19  plenty of surveillance.  We recused just the one that got it

20  going.  We have plenty of surveillance.

21         THE COURT:  Okay.  He can voluntarily surrender to

22  the US Marshals in Houston on August the 31st by

23  2:00 o'clock at 515 Rusk, at the US Courthouse there, so

24  they can inform him what institution has been designated.

25  Make sure that you're at the institution on the day that

1  you're supposed to be.  If not, your bond is forfeited and

2  an arrest warrant is issued against you and the Government

3  files another felony charge against you for failure to

4  appear and you don't want to have that kind of problem.

5           MR. MUNIER:  Thank you, Judge.

6           Houston, you said?

7           THE COURT:  That's where he has to go to the

8  Marshal's Office there at the Federal Courthouse Building,

9  so that they can inform him what institution has been

10 designated.

11          MR. MUNIER:  Thank you, Judge.

12          THE COURT:  I will recommend that he be placed in

13 an institution where he can receive any drug and/or alcohol

14 abuse treatment.

15          Thank you.

16      (Proceeding adjourned at 11:30 a.m.)

17                    * * * * *

18          *I certify that the foregoing is a correct*

19 *transcript to the best of my ability from the electronic*

20 *sound recording of the proceedings in the above-entitled*

21 *matter.*

22 */S/ MARY D. HENRY*

23 *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**D-337*

24 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
   *JTT INVOICE #54029 AMENDED*

25 *DATE:  REFILED SEPTEMBER 2, 2015*